**Juan SANTONI, Jr., et al., Appellants,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Appellee.**

No. 81–1475.

United States Court of Appeals, First Circuit.

Argued Feb. 2, 1982.

Decided May 10, 1982.

Richard A. Lee, San Juan, P. R., with whom Marisa Brugueras, San Juan, P. R., was on brief, for appellants.

Wayne D. Baller, Senior Atty., Washington, D. C., with whom Thomas A. Brooks, Gen. Counsel, E. Whitney Drake, Senior Atty., Washington, D. C., Roberto Boneta, and Francis, Doval, Munoz, Acevedo, Otero & Trias, Hato Rey, P. R., were on brief, for appellee.

Before GIBSON,* Senior Circuit Judge, BOWNES and BREYER, Circuit Judges.

BOWNES, Circuit Judge.

Appellants are unsuccessful bidders for an asset (a hotel) acquired by appellee, Federal Deposit Insurance Corporation (FDIC), from a failed bank. They appeal the district court's order of summary judgment in favor of the FDIC. 508 F.Supp. 1012. The principal issue is whether the district court properly concluded that appellants' action did not involve a claim based either on an express contract or promissory estoppel, but that it sounded in tort and was, therefore, barred by the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2680(a) and (h).[1]

---

\* Of the Eighth Circuit, sitting by designation.

**1.** 28 U.S.C. § 2680 provides in pertinent part:

The provisions of this chapter and section 1346(b) of this title shall not apply to—

(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise

The undisputed facts are as follows. On March 31, 1978, the Superior Court of Puerto Rico confirmed the appointment of the FDIC as receiver for the defunct Banco Credito y Ahorro Ponceno (the bank). On the same day the state court approved a liquidation plan whereby the FDIC as receiver sold Le Petit Hotel, an asset of the bank, to FDIC in its corporate capacity. The hotel, located in the Condado section of San Juan, was built in 1969, but had been abandoned later that year and had not been operated since. The FDIC's annual estimated holding expenses were calculated at $96,476, which included property taxes, insurance, guard services, maintenance, depreciation and temporary shoring to prevent the collapse of the building.

Because of these expenses and the rapid deterioration of the structure, the FDIC decided to attempt to sell the hotel. Pursuant to a published notice for closed bids, an auction was held, but the FDIC received no bids from any interested purchaser, including appellants.

Prior to the auction appellant Clemons communicated with the FDIC and expressed his interest in negotiating a purchase of the property. He suggested that the FDIC adopt a public auction or open negotiations. The FDIC responded in writing:

> To state that the FDIC will obtain a higher price and/or terms in a public auction is non-supportive. All concerns [sic] will probably submit their best bid and the FDIC will have the option to reject any or all bids and to reschedule another bidding.
>
> Furthermore, we feel that open negotiations with bidders does not necessarily mean that the best offer and/or terms can be achieved, as previously mentioned, the FDIC has the option to reject any and all bids and please be assured that the FDIC will treat all parties fairly and equitably and thereby eliminate any suspicion of collusion on behalf of this Federal Government agency. (emphasis added).

The FDIC also stated in this letter that "[t]hose parties interested in bidding should have their financing limit approved by another lending institution prior to the bidding date."

On May 17, 1979, the FDIC flatly rejected appellants' verbal offer of $400,000 and stated that $490,000 was the lowest bid acceptable to it. Appellants then wrote a letter on June 7 offering to buy the property for $490,000. But this offer was subject to several conditions, the principal one being that payment of earnest money in the sum of $10,000 and the balance of the purchase price was contingent on appellants obtaining long-term financing. On June 12, 1979, the FDIC flatly rejected the offer, stating tersely that the offer was unacceptable "due to several of your conditions and assumptions."

On July 24, 1979, a Mr. George Kogan sent a written offer of $350,000 for the hotel to the FDIC, together with a $35,000 cash deposit. On August 27, 1979, the Board of Directors of the FDIC approved the sale to Kogan for $350,000. There is no evidence in the record that at this time appellants were able to meet the FDIC financing requirements.

Based on these facts, the district court made the following findings: that the negotiations and sale to Kogan were not a sham or collusive; that the FDIC violated no rule or regulation by the sale to Kogan; that appellants did not acquire an exclusive right to purchase the property; that the FDIC made no representations that it would disclose to appellants the identity of competing bidders or the contents of their bids; and that appellants were aware at all times that the FDIC reserved the right to accept or reject any or all offers.

---

or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

. . . .

(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.

*Id.* § 2680(a) & (h).

Appellants argue that the grant of summary judgment was unwarranted because the FDIC made three promises to them that, when taken together, raise genuine and material factual issues as to whether an implied contract arose through promissory estoppel that bound the FDIC to inform appellants not only of competing offers but of internal agency decisions to negotiate for a price below that which the FDIC told Clemons was the lowest acceptable bid. These alleged promises include two representations by the FDIC in its November 9, 1978 letter to Clemons, stating that the FDIC retained the option to "reject any or all offers" but would "treat all parties fairly and equitably." The third alleged promise was a verbal statement by the FDIC on June 7, 1979, informing appellants that $490,000 was the lowest bid acceptable to the FDIC.

We will uphold the district court's entry of summary judgment only if, taking the record in the light most favorable to the party opposing the motion, there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *O'Neill v. Dell Publishing Co., Inc.*, 630 F.2d 685, 686 & n.1 (1st Cir. 1980); *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 54 (1976); Fed.R.Civ.P. 56(c); 10 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2716, at 430–32 (1973).

As a threshold matter, we begin by examining whether federal or state law must be applied in evaluating appellants' promissory estoppel claim.[2] The powers of the FDIC are set forth in 12 U.S.C. § 1819. This section provides in pertinent part that the FDIC shall have the power

> [t]o sue and be sued, complain and defend, in any court of law or equity, State or Federal. All suits of a civil nature at common law or in equity to which the Corporation shall be a party *shall be deemed to arise under the laws of the*

*United States,* and the United States district courts shall have original jurisdiction thereof, without regard to the amount in controversy ... except that any such suit to which the Corporation is a party in its capacity as receiver of a State bank and which involves only the rights or obligations of depositors, creditors, stockholders, and such State bank under State law *shall not be deemed to arise under the laws of the United States.*

12 U.S.C. § 1819 Fourth (emphasis added).

*D'Oench, Duhme & Co., Inc. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), is the leading statement by the Supreme Court interpreting this provision. Notably, this case was decided long before the phrase "and the United States courts shall have original jurisdiction thereof" was amended to the statute. Nonetheless, Justice Jackson wrote that the phrase "[a]ll suits of civil nature ... shall be deemed to arise under the laws of the United States" is not merely jurisdictional but indicates that federal common law should be applied. This conclusion "is suggested by the presence in the same section of the Act of the separate provision that the Corporation may sue or be sued 'in any court of law or equity, State or Federal.'" *Id.* at 467–68, 62 S.Ct. at 683–84 (Jackson, J., concurring). The amendment only strengthens this interpretation.

In addition, none of the exceptions enumerated in § 1819 applies. The FDIC as receiver sold the hotel to itself in its corporate capacity. Appellants' claims involve acts and omissions of the FDIC in that latter capacity only. *See FDIC v. Godshall,* 558 F.2d 220, 222–23 (4th Cir. 1977). Further, appellants are not depositors, creditors or stockholders of the defunct bank; they are simply outsiders who sought to purchase one of the bank's assets. The FDIC is currently negotiating liquidation sales such as this one throughout the country. Establishing the principles by which we determine whether an implied contract arose is

---

**2.** We agree with the district court that any possibility of establishing an express contract between appellants and the FDIC was foreclosed on June 12, 1979, when the FDIC in no uncertain terms rejected in writing appellants' offer of $490,000.

not a matter of purely local concern as would be ascertaining the rights of a defunct bank's depositors against the FDIC in its capacity as receiver. Here, the FDIC does not merely step into the shoes of the bank in relation to one of the bank's customers or creditors.

■ Under these circumstances, we are persuaded that federal law should apply. *D'Oench, Duhme & Co., Inc. v. FDIC*, 315 U.S. at 456, 62 S.Ct. at 679; *FDIC v. Lattimore Land Corp.*, 656 F.2d 139, 143–44 n.6 (5th Cir. 1981); *In re Anjopa Paper & Board Mfg. Co.*, 269 F.Supp. 241, 253 (S.D. N.Y.1967). We are aware of the uncertainty of shaping the content of federal common law, especially in light of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny. *See FDIC v. Meo*, 505 F.2d 790, 793 n.4 (9th Cir. 1974). *See generally* P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, Hart & Wechsler's The Federal Courts and the Federal System, 762–70 (2d ed. 1973). *D'Oench* does, however, offer some guidance:

> A federal court sitting in a non-diversity case such as this does not sit as a local tribunal. In some cases it may see fit for special reasons to give the law of a particular state highly persuasive or even controlling effect, but in the last analysis its decision turns upon the law of the United States, not that of any state. Federal law is no juridical chameleon, changing complexion to match that of each state wherein lawsuits happen to be commenced because of the accidents of service of process and of the application of the venue statutes. It is found in the federal Constitution, statutes, or common law. Federal common law implements the federal Constitution and statutes, and is conditioned by them. Within these limits, federal courts are free to apply the traditional common-law technique of decision and to draw upon all the sources of the common law in cases such as the present.

315 U.S. at 471–72, 62 S.Ct. at 685–86 (Jackson, J., concurring) (citation and footnote omitted). We will, whenever appropriate, look to the law of Puerto Rico for additional guidance. *Cf. Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

■ In examining the law, we keep in mind that when the FDIC acts in its corporate capacity, its contractual liability must be determined in the same fashion as that of a private party. *See Krupp v. FHA*, 285 F.2d 833, 834 (1st Cir. 1961). In assessing appellants' claim that an implied contract arose by promissory estoppel, we begin by quoting the Restatement (Second) of Contracts:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

*Id.* § 90; *accord, Universal Computer Systems v. Medical Servs. Ass'n*, 628 F.2d 820, 824 (3d Cir. 1980). Although its Civil Code does not expressly recognize the doctrine of promissory estoppel, that doctrine has been incorporated by judicial decision into the law of Puerto Rico. *Ramirez v. Gautier*, 87 P.R.R. 470, 481, 493–95 & n.16 (1963). The essence of promissory estoppel under both the Restatement and Puerto Rico law is the same: a promise upon which the promisee relies reasonably and in good faith binds the promisor to the extent necessary to avoid injustice.

Comment (b) to § 90 of the Restatement (Second) of Contracts outlines relevant factors to be considered in determining the extent to which a promisee's reliance is to be protected:

> The principle of this Section is flexible. The promisor is affected only by reliance which he does or should foresee, and enforcement must be necessary to avoid injustice. Satisfaction of the latter requirement may depend on the reasonableness of the promisee's reliance, on its definite and substantial character in relation to the remedy sought, on the formality with which the promise is made, on

the extent to which the evidentiary, cautionary, deterrent and channeling functions of form are met by the commercial setting or otherwise, and on the extent to which such other policies as the enforcement of bargains and the prevention of unjust enrichment are relevant.

■ The first essential element of promissory estoppel is that the promisor has made a binding offer in the form of a promise. *Debron Corp. v. National Homes Constr. Corp.*, 493 F.2d 352, 357 (8th Cir. 1974). This promise must be definite and certain so that the promisor should reasonably foresee that it will induce reliance by the promisee or a third party. *Owen of Georgia, Inc. v. Shelby County*, 648 F.2d 1084, 1095 (6th Cir. 1981); *Janke Constr. Co. Inc. v. Vulcan Materials Co.*, 527 F.2d 772, 774, 779 (7th Cir. 1976); *see Hoefel v. Atlas Tack Corp.*, 581 F.2d 1, 4 (1st Cir.), *cert. denied*, 440 U.S. 913, 99 S.Ct. 1227, 59 L.Ed.2d 462 (1978); *International General Electric Co. v. Concrete Builders*, 104 P.R.R. 1221 (1976); *cf. Pabon Salazar v. Ayala*, 71 P.R.R. 878, 881–82 (1950); Restatement (Second) of Contracts § 90 (illust. 15). A mere expression of future intention, however, does not constitute a sufficiently definite promise to justify reasonable reliance thereon. *Granfield v. Catholic Univ. of America*, 530 F.2d 1035, 1039–40 (D.C.Cir.), *cert. denied*, 429 U.S. 821, 97 S.Ct. 68, 50 L.Ed.2d 81 (1976); J. Calamari & J. Perillo, Contracts § 6–1, at 202 (2d ed. 1977). The recent Eighth Circuit case of *Burst v. Adolph Coors Co.*, 650 F.2d 930 (8th Cir. 1981), dealt with a similar claim based on almost identical language. It held that a promise of "fair and equal consideration" to an applicant for a beer distributorship was not one which the applicant could reasonably interpret to be an offer and on which he could reasonably rely. *Id.* at 932.

■ We hold that the alleged promises upon which appellants rely, taken together and considered as a whole, were too indefinite and uncertain to sustain a claim of promissory estoppel.

■ When the FDIC acts in its corporate capacity, it is vested with broad discretion to dispose of assets as it sees fit. *See Diercks v. Federal Savings & Loan Ins. Corp.*, 528 F.2d 916, 916–17 (7th Cir. 1976); *Edelman v. FHA*, 382 F.2d 594, 598 (2d Cir. 1967). Appellants made no offer accompanied by evidence that they were able to buy the property. They never advanced beyond the position of a hopeful buyer with little or no realistic financing resources. The offer accepted by the FDIC was unconditional and accompanied by a cash deposit of 10% of the purchase price. Given its broad discretion to dispose of assets, and under fundamental tenets of contract law, the FDIC was free to sell the hotel at whatever price it deemed prudent and practical.

Appellants suggest that, if they were given the opportunity to engage in discovery, they could uncover facts that would support their claims. No concrete examples are given of what discovery would disclose.

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Fed.R.Civ.P. 56(e). In light of the undisputed facts, we cannot conceive what discovery would accomplish, except to postpone the inevitable. The discovery argument, like the promissory estoppel claim, is only wishful thinking.

Obviously, there is no point in discussing appellants' theory of damages.

■ We therefore hold that the district court properly rejected appellants' claims based on express contract or promissory estoppel. Appellants' action sounds in tort for misrepresentation, deceit or abuse of discretion, and is therefore barred by the FTCA, 28 U.S.C. § 2680(a) and (h). There being no genuine and material factual issues, the FDIC was accordingly entitled to judgment as a matter of law, and entry of summary judgment in its favor was proper.

*Affirmed.*