Antone GONSALVES and Anthony
Gonsalves

v.

The ALPINE COUNTRY CLUB.

Civ. A. No. 81–0742 S.

United States District Court,
D. Rhode Island.

May 17, 1983.

Shuman & Ross by Robert A. Shuman,
Providence, R.I., for plaintiffs.

Cotroneo & Cotroneo by S. Thomas Co-
troneo, Johnston, R.I., for defendant.

## OPINION AND ORDER

SELYA, District Judge.

The instant action is an employment dis-
crimination suit brought pursuant to Title
VII of the Civil Rights Act of 1964, as
amended, 42 U.S.C. § 2000e et seq. ("Title
VII"). The gravamen of the complaint is
that the defendant, the Alpine Country
Club ("Alpine") discharged the plaintiffs
solely on account of race. Alpine has
moved for summary judgment. Oral argu-
ments were heard on April 4, 1983, and
supplemental briefing has now been re-
ceived. In support of its motion, the de-
fendant has filed a detailed statement of
material facts pursuant to Local Rule 12.-
1(a) of this Court. Since the plaintiffs have
filed no counterstatement, and have prof-
fered no affidavits, the facts as recited in
the defendant's statement are deemed to be
admitted. *See* Local Rule 12.1(d). In pass-
ing upon the issues presented, these facts,
and the travel of the controversy, must first
be reviewed.

### I.

The plaintiffs, father (Antone) and son
(Anthony), both black males, were contem-
poraneously employed as chefs at Alpine
from June 30, 1976 to July 29, 1977, at
which time the defendant discharged both
of them. On or about November 17, 1977
Anthony Gonsalves lodged a complaint with
the Rhode Island Commission for Human
Rights ("HRC") in which he charged that
the defendant was in violation of R.I.G.L.
§ 28–5–7.[1] Specifically, Anthony Gon-
salves alleged that the defendant discrimi-
nated against him on the basis of color and
race; and that such course of discriminato-

---

1. R.I.G.L. § 28–5–7 provides, in pertinent part,
that it shall be an unlawful employment prac-
tice for any employer:

(1) to refuse to hire any applicant for em-
ployment because of his race or color, reli-
gion, sex, handicap, age, or country of ances-
tral origin, or (2) because of such reasons, to
discharge an employee or discriminate
against him with respect to hire, tenure, com-
pensation, terms, conditions or privileges of
employment, or any other matter directly or

indirectly related to employment, or (3) in the
recruiting of individuals for employment or in
hiring them, to utilize any employment agen-
cy, placement service, training school or cen-
ter, labor organization, or any other employ-
ee referring source which such employer
knows, or has reasonable cause to know,
discriminates against individuals because of
their race or color, religion, sex, physical
handicap, age, or country of ancestral origin.

ry conduct culminated in his dismissal from employment because he was black. Some five days later (November 22, 1977), Antone Gonsalves filed a substantially similar complaint with the HRC. In March of 1978, while the HRC grievances were pending, the plaintiffs filed complaints arising out of the same conduct and circumstances with the Equal Employment Opportunity Commission ("EEOC").

Meanwhile, the HRC investigated, and on October 6, 1978 ruled preliminarily that reasonable cause existed to believe the plaintiffs' allegations. The HRC thereafter, on December 12, 1978, issued separate complaints on behalf of each plaintiff. In each of these citations, the HRC alleged that the defendant had violated R.I.G.L. § 28–5–7. Alpine denied the charges, and the complaints were consolidated for administrative adjudication. Hearings were commenced on January 9, 1979 and were concluded on February 21, 1979. Upon consideration of the evidence adduced at the hearings, the HRC ruled on July 26, 1979 that Alpine had unlawfully discharged the plaintiffs on account of their race.

The defendant, pursuant to R.I.G.L. § 28–5–28,[2] appealed that decision to the Rhode Island Superior Court (County of Providence). Justice Gallant of that tribunal, by slip opinion filed on July 11, 1980, *Gonsalves v. Alpine Country Club,* C.A. No. 79–2938 (R.I.Super.Ct. July 11, 1980), held that "there was no evidence of probative force presented which supported" the HRC findings, *id.* at 3; that Anthony "failed to

establish a *prima facie* case of discriminatory discharge", *id.* at 4, and was "properly discharged without racial animus", *id.* and that, as to Antone, "there was no evidence of probative force presented to demonstrate that Antone's dismissal was racially motivated" *id.* at 5. Justice Gallant therefore concluded that, pursuant to R.I.G.L. § 42–35–15(g)(5),[3] the HRC determinations were clearly erroneous, and reversed the decision as to each complainant, thereby effectively denying and dismissing the charges. The plaintiffs obtained a writ of certiorari from the Rhode Island Supreme Court on December 11, 1980, as a preliminary to review of Justice Gallant's rulings, but thereafter apparently lost interest; the appellate proceedings were subsequently dismissed for lack of prosecution following a show-cause hearing held in the state supreme court on June 18, 1981. Plaintiffs moved to reconsider the dismissal, but the motion for reconsideration was denied on July 16, 1981.[4]

In the meantime, however, the EEOC had also determined that there was reasonable cause to believe that the defendant had discriminated against the plaintiffs. Following the termination of the state court action, apparently at the instance and request of the plaintiffs, the EEOC on September 4, 1981 issued a right-to-sue letter. Within ninety days of receipt thereof, the plaintiffs filed suit in this Court.

## II.

Since the defendant has moved for *brevis* disposition pursuant to Rule 56, Fed.R.

---

**2.** R.I.G.L. § 28–5–28 provides:

Any complainant, intervener, or respondent claiming to be aggrieved by a final order of the commission may obtain judicial review thereof, and the commission may obtain an order of court for its enforcement, in a proceeding as provided in §§ 28–5–28 to 28–5–36, inclusive. Such proceeding shall be brought in the superior court of the state within any county wherein the unlawful employment practices which are the subject of the commission's order were committed or wherein any respondent, required in the order to cease and desist from unfair employment practices or to take other affirmative action, resides or transacts business.

**3.** R.I.G.L. § 42–35–15(g) provides in material part as follows:

The Court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

. . . .

(5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; . . .

**4.** The state proceedings, administrative and judicial, are for ease in reference hereinafter sometimes referred to in the aggregate as "*Gonsalves I*".

Civ.P., the applicable standard should be noted. It is well settled that summary judgment can be granted only where there is no genuine issue as to any material fact and where the movant is entitled to judgment as a matter of law. *Emery v. Merrimack Valley Wood Products, Inc.,* 701 F.2d 985, 986 (1st Cir.1983); *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976); *United Nuclear Corp. v. Cannon,* 553 F.Supp. 1220, 1226 (D.R.I.1982); *Milene Music, Inc. v. Gotauco,* 551 F.Supp. 1288, 1292 (D.R.I.1982). In determining whether these conditions have been met, the Court must view the record in the light most favorable to the party opposing the motion, *Emery v. Merrimack Valley Wood Products, Inc.,* 701 F.2d at 986; *John Sanderson & Co. (WOOL) Pty. Ltd. v. Ludlow Jute Co.,* 569 F.2d 696, 698 (1st Cir.1978), indulging all inferences favorable to that party. *Santoni v. Federal Deposit Insurance Corp.,* 677 F.2d 174, 177 (1st Cir.1982); *O'Neill v. Dell Publishing Co.,* 630 F.2d 685, 686 (1st Cir. 1980).

In the case at bar, the defendant has proffered twin theories in support of its motion. Since the Court finds the defendant's res judicata/collateral estoppel argument persuasive, however, the statute of limitations point need not be addressed.[5]

## III.

The defendant contends that the plaintiffs are foreclosed from pursuit of the instant Title VII action by the bar of res judicata,[6] ostensibly erected by the cumulative effect of the state court determinations in *Gonsalves I.* The touchstone of the defendant's argument is the recent Supreme Court decision in *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). Kremer, who had been discharged by his employer, lodged a complaint with the EEOC. That agency, in turn, referred his complaint to the New York Division of Human Rights ("DHR"). Kremer alleged that he had been dismissed because of his religion and his national origin. DHR rejected these contentions. Kremer prosecuted an appeal from this ruling through various levels of the New York courts, which affirmed DHR's decision. Kremer, nothing daunted, obtained a right-to-sue letter from the EEOC, and brought an action in federal court. His complaint was premised upon essentially the same charges of discrimination which the state courts had found meritless. The district court dismissed Kremer's action; the dismissal was affirmed on appeal, initially by the Second Circuit and ultimately by the Supreme Court. The Court's *ratio decidendi* was, in substance, that, assuming that the plaintiff had a full and fair opportunity to litigate his claims in the state forum, then 28 U.S.C. § 1738[7] "requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the state from which the judgments emerged." *Kremer v. Chemical Construction Corp.,* 456

---

**5.** In any event, the defendant's limitations contention skates on the thinnest of ice, and was all but abandoned at oral argument.

**6.** The Court recognizes that there is a distinction between res judicata (claim preclusion) and collateral estoppel (issue preclusion); and that the defendant's thesis here may well invoke the latter rather than the former. For purposes of this opinion, however, this is a distinction without a difference, especially since these two lines of defense would be treated in parallel fashion by the courts of Rhode Island. *R.A. Beaufort & Sons, Inc. v. Trivisonno,* 403 A.2d 664, 667 (R.I.1979). The defendant has pleaded both res judicata and collateral estoppel in its answer, and has thus fully pre-

served its rights. *See* Fed.R.Civ.P. 8(c). To facilitate analysis of the question *sub judice,* the Court will therefore refer to the defense simply as "res judicata".

**7.** 28 U.S.C. § 1738 provides in pertinent part that the "judicial proceedings [of any court of any State] . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." The principle so enunciated is one of the cornerstones of American federalism, the forerunner of the present statute having originally been enacted by the Congress, in much the same language, in the Act of May 26, 1790.

U.S. at 466, 102 S.Ct. at 1889 (footnote omitted). The defendant asseverates, therefore, that since the state courts have rendered a final judgment [8] in the premises in *Gonsalves I,* this Court must accord full faith and credit to that judgment and must debar plaintiffs' attempt to relitigate the discriminatory discharge issues in a federal forum.

The plaintiffs, however, attempt to confess and avoid. They do not dispute the primacy of *Kremer* on its facts, but point out that *Kremer* involved an instance wherein the employee resorted to the state courts by appealing an adverse administrative decision. They juxtapose *Kremer* in contradistinction to the case at bar, where the employer, rather than the employee, sought out the state courts. The observation is, to an extent, well made; the *Kremer* majority, indeed, did not explicitly rule upon whether or not res judicata would apply where the employee had not reached out to secure state judicial review of agency action, but had been propelled into such a forum by the employer's pursuit of state court relief. *Id.* 456 U.S. at 504–05 & n. 18, 102 S.Ct. at 1908–1909 & n. 18 (Blackmun, J., dissenting); *Davis v. United States Steel Supply,* 688 F.2d 166, 176 n. 12 (3rd Cir. 1982) (en banc). The precise question posed in the attendant facts and circumstances of cases such as this was, therefore, not directly and literally answered by *Kremer;* but this is not to say that the guideposts of *Kremer* do not clearly and unmistakably indicate the route and the result.

Despite the absence of an express holding on this point in *Kremer,* a fair reading of the majority opinion plainly demonstrates that the principles underlying the decision are-and must be-neutral as they relate to the identity of the party first seeking recourse to the state courts. The thrust of *Kremer* is the recognition of a clear and compelling congressional intent which does not "envision full litigation of a single claim in both state and federal forums." *Kremer v. Chemical Construction Corp.,* 456 U.S. at

474, 102 S.Ct. at 1893. The force of elementary logic militates strongly against shredding this manifest intent by adoption of a judge-made rule which limits its effect to cases wherein the employee has filed the appeal from agency action. To hold that the preclusive effect of 28 U.S.C. § 1738 turns on so vagarious a card would, at one fell swoop, undermine the rationale of *Kremer,* thwart the congressional will, and elevate circumstance above common sense. *Accord Capers v. Long Island Rail Road,* No. 72 Civ. 3168, slip op. at 4–5 (S.D.N.Y. March 8, 1983) (Gagliardi, D.J.). *See Unger v. Consolidated Foods Corp.,* 693 F.2d 703, 710 n. 11 (7th Cir.1982). *Cf. Isaac v. Schwartz,* 706 F.2d 15, 16 (1st Cir.1983); *Davis v. United States Steel Supply,* 688 F.2d at 176–77. Once it is determined that 28 U.S.C. § 1738 has not been impliedly repealed in the Title VII context (a determination which *Kremer* has emphatically made), then it would require the most brazen casuistry to suggest that so fundamental a pillar of our jurisprudence as full faith and credit must rest on a discreet peek behind the final judgment of a state court of competent jurisdiction to ascertain which of the litigants initially invoked that jurisdiction.

Nor do the authorities relied on by the plaintiffs dictate a contrary result. *Gunther v. Iowa State Men's Reformatory,* 612 F.2d 1079 (8th Cir.), *cert. denied* 446 U.S. 966, 100 S.Ct. 2942, 64 L.Ed.2d 825 (1980), *Smouse v. General Electric Co.,* 626 F.2d 333 (3d Cir.1980) and *Gilinsky v. Columbia University,* 440 F.Supp. 1120 (S.D.N.Y. 1977), all predate the decision of the Supreme Court in both *Kremer v. Chemical Construction Corp., supra,* and in *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). The precepts enunciated by the high court in those cases leave no room for the judicial interpolation of a preferential exception to wonted principles of res judicata as suggested in the earlier cases (of which *Gunther* is prototypical).

---

**8.** The finality of the state court judgment here cannot seriously be questioned, given the recall

by the state supreme court of its writ of certiorari.

Plaintiffs' citation of *Mitchell v. National Broadcasting Co.,* 553 F.2d 265 (2d Cir.1977) is equally unpersuasive, not only because *Kremer* and *Allen* collectively undercut its reasoning, but also because the Second Circuit was painstakingly careful in *Mitchell* to distinguish its facts from a situation where, as here, an employer's successful recourse to the state courts is asserted in bar of a subsequent Title VII action by the allegedly victimized employee. *Id.* at 275 n. 13.

The plaintiff's impassioned arguments to the contrary notwithstanding, the instant litigation cannot rationally be withdrawn from the integument of *Kremer.*

## IV.

Once it is determined that *Kremer* controls and that 28 U.S.C. § 1738 applies to this Title VII action, two ancillary questions arise. The first of these relates to the preclusive effect (if any) to be given *Gonsalves I* vis-a-vis the case at bar. § 1738 demands that federal courts, subject only to exceptions which need not be discussed here,[9] accord a state court judgment res judicata impact to the same extent that the state itself would give its prior judgment such effect. *See Kremer v. Chemical Construction Corp.,* 456 U.S. at 466, 102 S.Ct. at 1889; *Isaac v. Schwartz, supra,* 706 F.2d at 16; *Davis v. United States Steel Supply,* 688 F.2d at 170. The highest court of the state is acknowledged to be the "best authority" on state law, *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967); and thus, the focus must be on the effect which the Rhode Island Supreme Court would accord to *Gonsalves I. See Isaac v. Schwartz, supra,* 706 F.2d at 16; *Davis v. United States Steel Supply,* 688 F.2d at 170.

▮ Rhode Island has adopted a conventional approach to questions of this genre. For a court decision to be given res judicata effect in Rhode Island, there must be: (i) identity of parties; (ii) identity of issues; and (iii) finality of judgment. *Gnys v. Amica Mutual Insurance Co.,* 396 A.2d 107, 110 (R.I.1979); *Air-Lite Products, Inc. v. Gilbane Building Co.,* 115 R.I. 410, 347 A.2d 623, 630 (R.I.1975); *DiSaia v. Capital Industries, Inc.,* 113 R.I. 292, 320 A.2d 604, 607 (R.I.1974). There can be little doubt but that this case, in its present posture, fits paradigmatically within that rubric. The judgment of the superior court has become final. *See* note 8, *ante.* The parties in the state and federal actions are the same. Both suits prescind from the same conduct, namely, the incidents of June, 1976 to July, 1977, culminating in the twin discharges of July 29, 1977. There is no material variance in the issues: the claims of the plaintiffs in this case and those raised in the state litigation are much the same; in point of fact, the Rhode Island statute prohibiting employment discrimination bears a striking resemblance to Title VII. *Compare* R.I.G.L. § 28–5–7 *with* 42 U.S.C. § 2000e–2(a)(1).[10] The plaintiffs have made no contention that the issues, facts or resultant burdens are substantially different in this case as contrasted with *Gonsalves I.* In any event, the entry of a final judgment in *Gonsalves I* following an adjudication on the merits "extinguishes … all rights of a plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the complaint arose." Restatement (Second) of Judgments, § 24, *quoted with approval in Isaac*

**9.** One such exception arises in circumstances where the party against whom the estoppel is claimed did not have a "full and fair opportunity" to litigate the claim or issue, *Allen v. McCurry,* 449 U.S. 90, 95–96, 101 S.Ct. 411, 415–416, 66 L.Ed.2d 308 (1980); put another way, "[r]edetermination of issues is warranted if there is reason to doubt the quality, extensiveness or fairness of [the state] procedures …", *Montana v. United States,* 440 U.S. 147, 164 n. 11, 99 S.Ct. 970, 979 n. 11, 59 L.Ed.2d

210 (1979). *See Kremer v. Chemical Construction Corp., supra.* The possible applicability of this exception is discussed in the text, *infra.*

**10.** The kindred nature of the state court proceedings is evinced, as well, by Justice Gallant's reliance on federal case law in determining whether or not the plaintiffs had made out a case under R.I.G.L. § 28–5–7. *See, e.g., Gonsalves I, supra,* slip op. at 4.

*v. Schwartz, supra,* 706 F.2d at 16.[11] The Court, given these authorities, is constrained to conclude that the courts of Rhode Island would certainly afford res judicata effect to the judgment in *Gonsalves I;* and, so long as the opportunity to litigate in *Gonsalves I* was adequate, this Court must do likewise.

### V.

██ The viability of the plaintiffs' claims in this Court thus turns, in the final analysis, on whether or not the plaintiffs had a "full and fair opportunity" to litigate their remonstrances in the Rhode Island proceedings. The Rhode Island Supreme Court has interpreted the legislative panorama under which the HRC operates as providing the contestants with a meaningful hearing. *See Ferguson Perforating and Wire Co. v. Rhode Island Commission for Human Rights,* 415 A.2d 1055, 1056 (R.I.1980); *Millett v. Hoisting Engineers' Licensing Division,* 377 A.2d 229, 235–36 (R.I.1977). Such a characterization appears warranted, given perscrutation of the statutes setting forth the relevant procedures. The hearings held before the HRC provide for a full panoply of due process rights, including assistance of counsel, testimony under oath, and the cross-examination of witnesses. On appeal, the superior court may grant *pendente lite* or permanent relief, may hear additional testimony, and may modify, enforce, or set aside an order or decision of the HRC. R.I. G.L. §§ 28–5–18 to –32. The standard for judicial review of the administrative determination is sufficiently stringent. *See Kremer v. Chemical Construction Corp., supra; Unger v. Consolidated Foods Corporation,* 693 F.2d at 706–07. The rights available in these proceedings are markedly similar to, and surely no less than, the rights accorded to Kremer by the DHR, upon which the United States Supreme Court has placed the imprimatur of adequacy. *Compare Kremer v. Chemical Construction Corp.,* 456 U.S. at 483–85, 102 S.Ct. at 1898–1899. The Rhode Island format likewise matches up favorably with the regulatory scheme under which the Illinois Fair Employment Practices Commission functions, and which passed *Kremer* muster under the watchful eye of the Seventh Circuit. *See Unger v. Consolidated Foods Corp.,* 693 F.2d at 705–06. If the Messrs. Gonsalves are to avert the reach of § 1738, it cannot be on procedural grounds, as these plaintiffs patently were afforded (and vigorously exercised) plenary opportunity fairly to litigate the merits of their claims of racial discrimination in the state proceedings.

### VI.

It is evident from the record of the HRC and from the state court filings that these race discriminations claims have understandably generated considerable passion and rancor; and that termination of the litigation in this decurtate fashion will be a bitter pill for the plaintiffs to swallow. Yet, all litigation must come to an end; and, as significant a purpose as is served by Title VII, the bedrock tenets of American federalism are no less important. The proposition advanced by the plaintiffs here would, if carried to its logical extension, eviscerate 28 U.S.C. § 1738; and would create a bizarre anomaly in the law, in effect according half faith and credit, at the most, to the final judgment of a state court. Moreover, the plaintiffs' view of the statutory mosaic would institutionalize relitigation of issues already fully tried and fairly decided, a circumstance both anathematic to settled concepts of justice and reminiscent of the pungent realism expressed some eighteen centuries ago by the Roman poet Juvenal:

Like warmed-up cabbage served at each repast,

The repetition kills the wretch at last.

*Schwartz, supra,* 706 F.2d at 17. Such a principle is entirely in harmony with the decided Rhode Island cases. *Zalobowski v. New England Teamsters and Trucking Industry Pension Fund,* 410 A.2d 436, 437–38 (R.I.1980).

---

**11.** A statement of a different form of liability, in and of itself, is generally held to be inadequate to hurdle the barrier of res judicata where, as here, the claim (i) stems from the same transaction(s) and (ii) seeks redress for the same putative wrong(s). *Isaac v.*

Accordingly, the defendant's motion for summary judgment must be, and the same hereby is, granted.

SO ORDERED.