**FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, Plaintiff,**

**v.**

**URDECO a/k/a Urban Development Corporation; Coamo Developers Corporation; Robert S. Prann, Evelyn Prann and their conjugal partnership; and Jose Lopez Matos, Defendants.**

**Civil No. 85–0359.**

United States District Court,
D. Puerto Rico.

Aug. 28, 1986.

Gabriel Hernández Rivera, Feldstein, Gelpí Hernández & Gotay, Old San Juan, P.R., for plaintiff.

Jorge L. Rovira, Río Piedras, P.R., for Cruv.

Carlos J. Quilichini, Hato Rey, P.R., for Jose Lopez Matos.

Carlos A. Quilichini, San Juan, P.R., for Urdeco.

Eldia Díaz Olmo, Rodríguez Ramon, Pena & Díaz, Hato Rey, P.R., for R. Prann, Evelyn Prann and the conjugal partnership.

## OPINION AND ORDER

PIERAS, District Judge.

The Court has before it various issues that were submitted for its decision pursuant to our Order of October 1, 1985. These issues are the following:

1. Whether plaintiff Federal Deposit Insurance Corporation (FDIC) is liable on the counterclaim of defendant alleging damages consisting of loss of earnings for breach of contract.

2. Whether the guarantors Robert S. Prann, Evelyn Prann and the conjugal partnership formed by them, and José Lopez Matos are liable for the $75,000.00 loan under the letter of continuous guaranty.

The October 1, 1985 Order provides that, if the second issue is decided for plaintiff, co-defendant Lopez Matos will be allowed to file a brief in relation to his allegation that he was discharged from the obligation by the bank.

## I. FINDINGS OF FACT

The parties stipulated to the authenticity of the following documents:

a) a copy of the Commercial Open End Agreement by and between URDECO and Girod Trust Company dated August 29, 1983 in an amount not to exceed $100,-000.00;

b) a copy of the credit memo for $75,-000.00 issued by Girod Trust Company to

the checking account of URDECO, dated August 29, 1983;

c) a copy of URDECO's $75,000.00 commercial loan and interest ledger, and

d) a copy of a continuous letter of guarantee executed by defendants dated September 30, 1983.

The parties also stipulated to the following facts:

On August 29, 1983, URDECO received a commercial loan in the principal amount of $75,000.00 from Girod. The loan is evidenced by a credit memorandum to the checking account of URDECO. The note is payable on demand and bears interest at the prime rate. On October 24, 1983, URDECO made a partial payment on said note in the amount of $13,135.21, thus reducing the principal amount due thereon to $61,-864.79. URDECO has paid accrued interest on said note up to June 30, 1984. Girod ceased operations on August 16, 1984. The FDIC in its corporate capacity purchased the assets which are subject of this action, including promissory notes given as security by URDECO.

It is also stipulated that Robert S. Prann, his wife Evelyn Prann and José López Matos executed and delivered to Girod Trust Company a continuing letter of guarantee dated September 30, 1983, jointly and severally guaranteeing full payment of the principal amount of any indebtedness of URDECO up to $8,500,000.00, and interest which may accrue thereon, as well as costs, expenses and attorney's fees. At the time of the execution of the guaranty, the commercial loan referred to above was pending payment by URDECO.

## II. FDIC'S MOTION TO DISMISS URDECO'S COUNTERCLAIM

For purposes of deciding the plaintiff's Motion to Dismiss, the Court takes the facts as alleged in codefendant URDECO's counterclaim of April 9, 1985. The counterclaim states that Girod Trust Company executed a Loan and Pledge Agreement with URDECO on September 30, 1983 for the financing, construction and subsequent permanent financing of a housing project

named Jardines de Coamo. URDECO alleges that, as of this date, it was complying fully with the terms of the agreement at the time Girod ceased operations in August 1984 and that no notice of default had been issued by Girod.

On August 27 and 28, 1984, URDECO submitted to the FDIC requests for payment, one for $71,321.84, and the other for $23,636.35, which the FDIC refused to honor. URDECO alleges that, due to the FDIC's refusal, the Puerto Rico Housing Bank and Finance Agency withdrew the interim finance insurance, and put URDECO in a position where it was unable to pursue alternate interim and permanent financing for the completion of the project. URDECO contends that the FDIC's refusal to perform Girod's obligations under the agreement created a situation whereby URDECO cannot be compelled to perform under the contract because performance is now impossible. URDECO prays for the rescission of the contract, releasing it from its obligation to perform under the agreement, and for an order directing the FDIC to pay to URDECO $94,958.09 for work performed on the project along with an additional unspecified sum for damages.

After a careful review of the arguments of the parties, the Court concludes the following. This suit involves the FDIC, an agency of the United States, in its corporate capacity. As such, it is deemed to arise under the laws of the United States. 12 U.S.C. § 1819. Under circumstances such as these, federal law provides the rule of decision. *D'Oench, Duhme & Co., Inc. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942); *Santoni v. FDIC*, 677 F.2d 174 (1st Cir.1982). The issue before the Court is whether URDECO can assert in Federal Court a counterclaim based on a separate debt that Girod allegedly owes it. For the following reasons, the Court finds that URDECO's counterclaim cannot be asserted. URDECO's counterclaim for $94,958.09 for work performed sounds in contract and, as such, fails to satisfy the statutory requisites for

suit. Actions in contract against the FDIC have been limited by Congressional restriction of the scope of agreements which a debtor can raise against an FDIC claim based upon a purchased asset. Agreements which give rise to counterclaims against the FDIC must be: (1) in writing; (2) executed by the bank and the debtor contemporaneously with the acquisition of the asset by the bank; (3) approved by the directors or loan committee, which approval is reflected in the minutes, and (4) contained in an official bank record. 12 U.S.C. § 1823(e); *FDIC v. La Rambla Shopping Center, Inc.,* 791 F.2d 215 (1st Cir.1986). In this case, the agreement which is the subject of URDECO's counterclaim arguably meets the first and second requirements. From a detailed consideration of the record, we are not convinced that it meets the other two requirements. We thus cannot find that the FDIC is a successor-in-interest of Girod for purposes of this loan agreement urged by URDECO, or that URDECO's claim for work performed on the project pursuant to its Loan and Pledge Agreement with Girod can defeat or diminish the interest of the FDIC claimed in this case.

■ Nor can we find applicable any exception for a "defensive set off" to allow URDECO relief. Such exception in the context of permissive counterclaims would ignore the policies of underlying § 1823(e), *La Rambla,* at 220–21. In the context of a recoupment theory against the United States, a set off would be barred since the counterclaim does not arise out of the same transaction or occurrence as the original claim. C. Wright & A. Miller, *Federal Practice and Procedure* § 1427 note 1 and accompanying text. The facts before us reveal that the complaint arises from a purchase transaction involving notes which the FDIC seeks to enforce and that URDECO's counterclaim arises from an entirely separate agreement between the counterclaimant and Girod.

■ URDECO's claim for additional damages resulting from FDIC's refusal to honor Girod's agreement with URDECO sounds in tort. Because the FDIC is a "federal agency" within the coverage of the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq., e.g., Safeway Portland Emp. Federal Credit Union v. FDIC,* 506 F.2d 1213 (9th Cir.1974), that Act provides the exclusive remedy. 28 U.S.C. § 2679. It is clear that URDECO has failed to plead the jurisdictional prerequisite of exhaustion of administrative remedies, but said failure is not fatal; URDECO should then be granted an opportunity to amend its pleading. *Gillespie v. Civiletti,* 629 F.2d 637 (9th Cir.1980). However, the Court finds that URDECO's claim is one for abuse of discretion on the part of the FDIC in refusing to honor the agreement, 28 U.S.C. § 2680(a), and one arising out of interference with contract rights. 28 U.S.C. § 2680(h). *See Santoni v. FDIC,* 677 F.2d 174, 179 (1st Cir.1982). As such, this portion of the claim is barred as excepted by the Federal Tort Claims Act.

## III. LIABILITY OF GUARANTORS

■ Codefendants Robert S. and Evelyn Prann allege that the letter of guaranty limits the scope of the guaranty to providing security only for notes issued pursuant to the Loan and Pledge Agreement and not for the loan at issue here executed one month before the agreement. They cite page two of the letter, which states that its purpose is "to induce you to enter into and make loans under a certain Loan and Pledge Agreement ... for financing of a housing project in Coamo ..." As authority for this interpretation, codefendants point to 31 L.P.R.A. § 3475, § 4876 and *Planned Credit of P.R., Inc. v. Page,* 103 P.R.R. 341 (P.R. 1945) (when guarantor is not an insurance company, surety contract should be strictly construed). Sections 3475 and 4876 provide respectively that the stipulations of a contract should be interpreted in relation to one another, and that the liability of sureties must be expressly specified and should not be presumed.

FDIC opposes, citing language in the letter of guaranty expressly stating that the co-defendants "guarantee ... prompt pay-

ment ... also of any other debt, of any nature, which the borrower may now or hereafter owe you ... whether issued before or after this date ...." Plaintiff argues that determination of the intention of the parties to a contract must take into consideration the acts of the parties prior to, contemporaneously with, and subsequent to the execution of the contract. According to plaintiff, since Robert S. Prann and José López Matos, acting on behalf of URDECO, executed the commercial open end agreement on August 29, 1983, on which date the loan at issue was also granted, they knew or should have known at the time of execution of the letter of guaranty that there was an unpaid balance on the loan. Plaintiff argues that the contract of guaranty should be construed as a whole and effect given to all language employed if possible. *E.g., Advance Process Supply v. Litton Industries Credit,* 745 F.2d 1076, 1079 (7th Cir.1984); *Craftmark Homes Inc. v. Nanticoke Const. Co.,* 526 F.2d 790, 793 (3rd Cir.1975).

The Court concludes that the language used in the contract and cited by plaintiff, when viewed in light of the circumstances surrounding the agreement, and construing the contract of guaranty as a whole, expresses the intent of the parties to have the letter of continuing guarantee extend to and cover the unpaid balance due by URDECO on the $75,000.00 loan of August 29, 1983. Accordingly, the Court finds Robert S. Prann, Evelyn Prann and Jose Lopez Matos liable to the plaintiff in the amount of $61,864.79 plus interest.

## IV. CONCLUSION

For all the above stated reasons, plaintiff's Motion to Dismiss URDECO's counterclaim is GRANTED. We further hold that codefendant URDECO's guarantors, Robert S. Prann, Evelyn Prann and the conjugal partnership created by them, and Jose Lopez Matos, are liable to FDIC under the letter of continuing guarantee of September 30, 1983 for the unpaid balance of principal and interest due by URDECO on the $75,000.00 loan of August 29, 1983. Pursuant to the Order of this Court issued on October 1, 1985, the Court ORDERS codefendant Jose Lopez Matos to file within 20 days of the issuance of this Order a brief stating his position alleging that he was discharged from this obligation by the bank.

There being no reason for delay, a partial judgment against Robert and Evelyn Prann will be entered accordingly.

IT IS SO ORDERED.