STATE OF MAINE
KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-2020-0110

Kimberly Phinney, Clark Phinney, and
LILAC MIXOLOGY & CATERING,

    Plaintiffs/Counterclaim Defendants,

v.

Eugene A. Carbona, Rocio V. Carbona,
and THE BARN AT SILVER OAKS
ESTATE,

    Defendants/Counterclaim Plaintiffs,

AND

Eugene A. Carbona, Rocio V. Carbona,
and THE BARN AT SILVER OAKS
ESTATE,

    Third-Party Plaintiffs,

v.

Zachery Phinney and Samantha Phinney,

    Third-Party Defendants.

**DECISION AND ORDER**

## INTRODUCTION

Before the court are several pending motions filed by the Carbonas and the Barn at Silver Oaks (collectively, "Silver Oaks" hereafter) and by the Phinneys and Lilac Mixology and Catering (collectively, "Lilac" hereafter). These motions include: Silver Oaks's motion to dismiss the complaint; Lilac's motion to dismiss the counterclaim and third-party complaint; Lilac's motion for leave to file a supplemental complaint; and Lilac's request for judicial notice. The court addresses these matters below.

1

## FACTUAL BACKGROUND

*Lilac's Complaint.* Kimberly and Clark Phinney own and operate a catering and bar services business called Lilac Mixology and Catering ("Lilac").[1] Compl. ¶¶ 1-2. Meanwhile, defendants Mr. and Mrs. Carbona own and operate the Barn at Silver Oaks Estate ("Silver Oaks"), which is a wedding and special events venue located in Winthrop, Maine. Compl. ¶¶ 3-4.

Lilac began entering into contracts with clients holding events at Silver Oaks after a showcase event organized by the Carbonas in 2014. Compl. ¶¶ 4, 6. In April 2018, the Carbonas and Lilac entered into an arrangement whereby Lilac would become the exclusive provider of all "remaining unbooked Beverage Services" for weddings and other events held at Silver Oaks. Compl. ¶¶ 12, 24; Compl. Ex. A. In exchange for Silver Oaks exclusively using Lilac, Lilac would pay Silver Oaks a referral fee consisting of 10% of Lilac's profits earned from each event worked at Silver Oaks. Compl. ¶¶ 12, 24; Compl. Ex. A. The arrangement was memorialized in a "Letter of Understanding" that was signed by both parties. Compl. ¶ 24; Compl. Ex. A. The agreement was "indefinite" in duration. Compl. ¶ 25.

Lilac began to enter into bar and catering contracts that fell within its agreement with Silver Oaks. Compl. ¶ 32. During the 2019 season, however, the personal and business relationships between the Carbonas and the Phinneys began to deteriorate. Compl. ¶ 35. The Carbonas were pursuing a new vision for their business, which involved the imposition of certain expectations and conditions as to which Lilac was not amenable. *See* Compl. ¶¶ 33-38, 42. Throughout March and April of 2020, the Carbonas and the Phinneys discussed their working relationship and attempted to renegotiate a new agreement. Compl. ¶¶ 36-46. Ultimately, however, the parties were unable to reach a new agreement, causing the April 2018 agreement to remain in place. Compl. ¶ 46. At one point, Kimberly Phinney suggested that Lilac complete all of the contracts already in place, allowing the parties to

---

[1] Lilac was formerly known as Café 130 on Main. Compl. ¶ 1, 27.

2

go their separate ways thereafter. Compl. ¶ 44. Lilac entered into 24 separate bar and catering service contracts at Silver Oaks for the 2020/2021 seasons, totaling almost $250,000. Compl. ¶¶ 141, 162.

With the 2020 wedding season approaching, the relationship between the Phinneys and Carbonas became further strained by the coronavirus pandemic, which resulted in the cancelation, modification, postponement, and rescheduling of many Silver Oaks-Lilac events. E.g., Compl. ¶¶ 81 82, 95; Compl. Ex. D, E. Several clients emailed Kimberly Phinney as they attempted to navigate the logistics of their modified and rescheduled weddings. Compl. ¶¶ 47, 50, 51. On April 21, 2020, Ms. Mello—a bride who was a mutual client of Lilac and Silver Oaks—sent the following email to Kimberly Phinney: "Veronica had mentioned that if for some reason we end up having less people than the 150 we planned on some of the money that we've paid for the catering could go towards the bar? Would that still be the case?" Compl. ¶ 50; Compl. Ex. D. Kimberly Phinney also heard from Mr. O'Neil—another mutual client who rescheduled his wedding from 2020 to 2021 due to the coronavirus. Mr. O'Neil's email stated: "We understand from the Barn at Silver Oaks that Lilac Mixology will not be providing bar services at that venue starting in 2021." Compl. ¶ 51; Compl. Ex. E. Mr. O'Neil then requested a refund on the deposit for the bar services he had contracted for with Lilac. Compl. ¶ 101. Lilac's lawsuit followed.

Lilac advances multiple claims against Silver Oaks, with the Carbonas' conduct during the 2020 wedding season—particularly the Carbonas' statements to mutual Lilac-Silver Oaks clients—at the heart of their complaint. Specifically, Lilac alleges the following causes of action: tortious interference with economic advantage and contractual relations, defamation, negligence, fraud, breach of contract, promissory estoppel, and intentional infliction of emotional distress. Lilac also seeks punitive damages and preliminary and permanent injunctive relief.

*The Counterclaim/Third-Party Complaint.* The 2020 wedding season likewise serves as the backdrop for Silver Oaks's counterclaim and third-party complaint, which asserts claims against Lilac, Kimberly and Clark Phinney, and third-party defendants Samantha and Zachery Phinney. Samantha and Zachery—Kimberly and Clark's adult

3

children—are both employed by Lilac, with Zachery working as a mixologist and Samantha working as a member of the kitchen staff. Countercl./Third-Party Compl. ¶ 6-7.

Sometime in the spring or summer of 2020, two brides who had booked wedding weekends at Silver Oaks canceled in favor of alternate venues. Counterclaim/Third-Party Compl. ¶ 31. The Carbonas did not understand why the cancellations occurred. Countercl./Third-Party Compl. ¶ 32. On July 22, 2020, however, the Carbonas learned from a client, Mr. Mihalakis, that Zachery had made certain claims about Silver Oaks. *Id.* Specifically, the Carbonas learned that Zachery told Mr. Mihalakis that Lilac was having issues with Silver Oaks; Silver Oaks was failing to comply with coronavirus-related CDC guidelines or other legal requirements applicable to event venues; and Silver Oaks and/or the Carbonas were trying to secure contracts/deposits in inappropriate ways to the detriment of their clients. *Id.* Zachery encouraged Mr. Mihalakis to switch to a different venue. Zachary also told Mr. Mihalakis that "[w]e don't give a fuck about The Barn anymore," "[w]e are looking out for you," and "[w]e know their inner workings." Countercl./Third-Party Compl. ¶ 33.

Around this time, another Silver Oaks client, Mr. Schlutt, forwarded the Carbonas an email chain he had received from Kimberly Phinney. Countercl./Third-Party Compl. ¶ 33; Ex. A. The email chain reveals an exchange between Samantha Phinney and a State of Maine employee in which the employee gave Samantha information about coronavirus guidelines, compliance with those guidelines, and how to report noncompliance. Countercl./Third-Party Compl. Ex. A. It further reveals that Kimberly forwarded Samantha's email to Mr. Schlutt along with a message of her own. *Id.* In the accompanying message, Kimberly seeks confirmation and proof that Mr. Schlutt's upcoming wedding at Silver Oaks will take place with the necessary state approvals and will be in compliance with coronavirus guidelines. *Id.* Kimberly indicated that she was not reporting any noncompliance. *Id.* She further described a story where her cousin's wedding was cancelled at the last minute "due to COVID" based on the venue's failure to obtain the necessary approvals. *Id.* Kimberly forwarded Samantha's email to other Silver Oaks clients as well. Countercl./Third-Party Compl. ¶ 36.

4

Based on these events, Silver Oaks filed a counterclaim and third-party complaint against Lilac, Kimberly Phinney, Clark Phinney, Samantha Phinney, and Zachery Phinney, alleging the following claims (1) tortious interference with economic advantage or contractual relations, (2) defamation, and (3) civil conspiracy.

Silver Oaks moved to dismiss all counts of the complaint pursuant to rule 12(b)(6) of the Maine Rules of Civil Procedure. Likewise, Lilac moved to dismiss all counts of the counterclaim and third-party complaint pursuant to rule 12(b)(6). Both motions to dismiss have been briefed, and on September 17, 2020, the court heard oral argument on the motions.

After oral argument was held, Lilac filed a motion asking the court: (1) for leave to file a supplemental complaint pursuant to M.R. Civ. P. 15(d), and; (2) to take judicial notice of various facts. Silver Oaks opposes both requests.

The court addresses these pending motions in turn.

## DISCUSSION

### I. The Parties' Motions to Dismiss Pursuant to Rule 12(b)(6)

#### A. *Standard of Review*

"A motion to dismiss tests the legal sufficiency of the complaint." *Livonia v. Town of Rome*, 1998 ME 39, ¶ 5, 707 A.2d 83. "For purposes of a Rule 12(b)(6) motion, the material allegations of the complaint must be taken as admitted." *Id.* "In reviewing a dismissal, [the court] will examine the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* "A dismissal should occur when it appears beyond doubt that a plaintiff is entitled to no relief under any set of facts that he might prove in support of his claims." *Id.* (internal quotations omitted).

#### B. *Silver Oaks's Motion to Dismiss Lilac's Complaint*

Silver Oaks moves to dismiss all counts of the complaint pursuant to rule 12(b)(6). Specifically, it argues that Lilac's complaint fails to state a claim of: (1) tortious interference with economic advantage and contractual relations, (2) defamation, (3)

5

negligence, (4) fraud, (5) breach of contract, (6) promissory estoppel, and (7) intentional infliction of emotional distress. Silver Oaks also argues that Lilac is not entitled to punitive damages or injunctive relief.

1. *Tortious Interference with Economic Advantage and Contractual Relations*

In its complaint, Lilac alleges that Silver Oaks tortiously interfered with its bar and catering contracts with Ms. Mello and Mr. O'Neil. It supports its claim of interference by pointing to two alleged falsehoods contained in email communications from Ms. Mello and Mr. O'Neil that it attributes to the defendants. Specifically, it points to: (1) Ms. Mello's email, stating: "[Ms. Carbona] had mentioned that if for some reason we end up having less people than the 150 we planned on some of the money that we've paid for the catering could go towards the bar? Would that still be the case?" and; (2) Mr. O'Neil's email, stating: "We understand from the Barn at Silver Oaks that Lilac Mixology will not be providing bar services at that venue starting in 2021." In support of its motion to dismiss this count, Silver Oaks argues that Lilac failed to assert sufficient facts to establish that any interference was done through fraud or intimidation or that Lilac was damaged as a result.

"Tortious interference with a prospective economic advantage requires a plaintiff to prove: (1) that a valid contract or prospective economic advantage existed; (2) that the defendant interfered with that contract or advantage through fraud or intimidation; and (3) that such interference proximately caused damages." *Rutland v. Mullen*, 2002 ME 98, ¶ 13, 798 A.2d 1104. Interference by fraud requires the following elements: "(1) making a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or refrain from acting in reliance on it, and (5) the other person justifiably relies on the representation as true and acts upon it to the damage of the plaintiff." *Id.* ¶ 14. "Interference by intimidation involves unlawful coercion or extortion." *Id.* ¶ 16.[2]

---

[2] Lilac's complaint does not assert any facts suggesting that Silver Oaks engaged in acts of intimidation.

6

Tortious interference through fraud requires that the plaintiff state the circumstances surrounding the fraud with particularity. *Gallagher v. Penobscot Cmty. Healthcare*, No. CV-16-54, 2017 Me. Super. LEXIS 215, \*31 (Mar. 21, 2017); M.R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity"). Courts have interpreted Rule 9(b)'s nearly identical federal counterpart to require the plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Suna v. Bailey Corp.*, 107 F.3d 64, 68 (1st Cir. 1997) (internal quotation marks omitted).[3]

In this case, Lilac has failed to state a claim of tortious interference with contractual relations through fraud. The allegations are insufficient as to both the Mello contract and the O'Neil contract.

The Mello Contract. The allegations fall short not only because Lilac has failed to plead fraud with the particularity required,[4] but also because Lilac has failed to allege facts that support the necessary elements of a fraud claim. Specifically, the complaint is deficient in that it fails to include facts showing that Ms. Mello relied upon Ms. Carbona's allegedly false representation as true and acted upon the statement to the damage of Lilac. *Rutland*, 2002 ME 98, ¶ 14. Indeed, the allegations relating to this element come in the form of generalized legal conclusions, which the court need not accept as true.

After viewing all the well-pleaded facts in a light most favorable to Lilac, the court cannot identify any reliance on the allegedly false statement that worked to Lilac's detriment. After Ms. Carbona stated how Ms. Mello's money could be reapportioned between her various contracts with Lilac, Ms. Mello did not accept Ms. Carbona's word at

---

[3] The Law Court has held that "Maine's Rules 8(a) and 9(b) are practically identical to the comparable federal rules." *Bean v. Cummings*, 2008 ME 18, ¶ 11, 939 A.2d 676. Moreover, "[w]here a Maine Rule of Civil Procedure is identical to the comparable federal rule, [the Law Court has] value[d] constructions and comments on the federal rule as aids in construing [Maine's] parallel provision." *Id.* (internal quotation marks omitted).

[4] The court notes that Lilac has not explained why the statement was false when made.

7

face value, but rather sought confirmation from Lilac as to whether Ms. Carbona was correct. Ms. Mello might have relied on the statement, but only as a starting point to engage Lilac in a conversation on the subject. The facts in the complaint reveal that Ms. Mello did not accept Ms. Carbona's alleged misstatement as true and she relied on the statement in a way that did not act to the detriment of Lilac. Accordingly, Ms. Carbona's statement to Ms. Mello do not allow Lilac to state a claim for tortious interference.

The O'Neil Contract. The court agrees with Silver Oaks that the complaint fails to allege sufficient facts demonstrating that its representation to Mr. O'Neil was false. The allegations in the complaint fall short of satisfying the heightened pleading standard for fraud. Moreover, the court is not convinced that Silver Oaks's statement to Mr. O'Neil is actionable as fraud as pled.

As noted, the heightened pleading standard for fraud claims generally requires the plaintiff to explain why the statements were fraudulent. *Suna*, 107 F.3d at 68. "Simply alleging, in conclusory terms, that the statements are false, without demonstrating why, is insufficient." *NCA Holding Corp. v. Ernestus*, 97 Civ. 1372 (LMM), 1999 U.S. Dist. LEXIS 13230, at *9 (S.D.N.Y. Aug. 25, 1999); *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 812 (2d Cir. 1996) ("to satisfy Rule 9(b), plaintiffs must allege in what respects the statements at issue were false"); *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 114 (2d Cir. 1982) ("conclusory allegations that defendant's conduct was fraudulent or deceptive are not enough"); *Driscoll v. Landmark Bank for Sav.*, 758 F. Supp. 48, 52 (D. Mass. 1991) ("a complaint must make some step toward explaining how and why the statements made by the defendants were false and misleading when made"); *Loan v. Federal Deposit Ins. Corp.*, 717 F. Supp. 964, 967 (D. Mass. 1989) ("plaintiff has an obligation to explain what is untrue about each of the challenged statements and cannot merely quote a statement and assert that it is untrue").

Here, the complaint fails to explain how and why Silver Oaks's statement to Mr. O'Neil was false or misleading when made. The complaint merely sets forth the challenged statement—that Lilac "will not be providing bar services at that venue starting in 2021"—

and asserts that the statement is false. This is insufficient to satisfy the heightened pleading standard and to state a claim of fraud.

Unable to point to any allegations in the complaint explaining why the statements were false, Lilac argues it has a legal right to perform on it contracts—including those rescheduled for 2021. It argues that it has a right to do so without Silver Oaks's permission and in the absence of any contractual arrangement with them. Thus, the argument goes, any assertion that "Lilac will no longer be providing bar services at Silver Oaks starting in 2021" is necessarily false because it is at odds with Lilac's right to perform on its third-party contracts. At bottom, Lilac claims that the challenged statements are false because they are legally incorrect.

Lilac's theory does not allow it to state a claim. Lilac cites no authority to support its contention that a business has a right to perform on a third-party contract for services on someone else's property over the objection of the property owner and without permission or a contractual arrangement allowing them to do so. Moreover, the court is not aware of any authority that supports the broad right that Lilac claims. Accordingly, Lilac has failed to state a claim of tortious interference with the O'Neil contract.

2. *Defamation*

Silver Oaks's statements to Ms. Mello and Mr. O'Neil likewise serve as the basis for Lilac's defamation claim. Silver Oaks argues that the statements are not actionable as defamation, arguing, among other things, that they are not defamatory. The court agrees with Silver Oaks that the statements identified in the complaint are not actionable.

A defamation cause of action requires the following elements: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting to at least negligence on the part of the publisher, and; (4) actionability irrespective of special harms or the existence of special harm caused by the publication. *Cole v. Chandler*, 2000 ME 104, ¶ 5, 752 A.2d 1189.

With respect to the first element, "[a] defamation claim requires a statement—i.e. an assertion of fact, either explicit or implied, and not merely an opinion, provided the opinion does not imply the existence of undisclosed defamatory facts." *Lester v. Powers*,

9

596 A.2d 65, 69 (Me. 1991) (citations omitted). "The crucial difference between statement of fact and opinion depends upon whether ordinary persons hearing or reading the matter complained of would be likely to understand it as an expression of the speaker's or writer's opinion, or as a statement of existing fact." *Caron v. Bangor Pub. Co.*, 470 A.2d 782, 785 (Me. 1984); *Gray v. St. Martin's Press, Inc.*, 221 F.3d 243, 248 (1st Cir. 2000) (explaining that if the speaker "is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable" (citation omitted)). "In assessing whether a statement expresses fact or opinion, [the court] look[s] to the totality of the circumstances and to whether the statement was intended to state an objective fact or a personal observation." *Ballard v. Wagner*, 2005 ME 86, ¶ 11, 877 A.2d 1083. "The determination whether an allegedly defamatory statement is a statement of fact or opinion is a question of law." *Caron*, 470 A.2d at 784.

Moreover, the statement of fact must be "defamatory." *Cole*, 2000 ME 104, ¶ 5. "A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Bakal v. Weare*, 583 A.2d 1028, 1029 (Me. 1990) (internal quotation marks omitted). Like the statement of fact versus opinion determination, "[w]hether the statement complained of is capable of conveying a defamatory message at all is a question of law." *Id.* at 1030.

In this case, the statement to Ms. Mello and the statement to Mr. O'Neil are not actionable because neither statement constitutes a defamatory statement of fact.

Statement to Ms. Mello. The court does not see how the statement to Ms. Mello was capable of conveying a defamatory message. The statement was not reputationally harmful in a way that lowered Lilac or the Phinneys in the estimation of the community nor did the statement tend to deter Ms. Mello from dealing with Lilac. Rather, Ms. Carbona, who provided wedding planning services at Silver Oaks, was merely offering advice about how Ms. Mello might proceed in the event that she had fewer wedding guests than anticipated. Far from discouraging Ms. Mello from dealing with Lilac, the statement

10

encouraged Ms. Mello to work with Lilac to see if it could make accommodations if fewer guests were in attendance. That Ms. Carbona's suggestion turned out not to be a viable option does not make the statement defamatory.

Moreover, the statement to Ms. Mello constituted conjecture or opinion, not a statement of existing fact. The statement commented on the accommodations Lilac could make "if for some reason" Ms. Mello had fewer guests than anticipated. In other words, the statement commented on what Lilac would do in a hypothetical situation. No ordinary person would consider this a statement of fact.

Statement to Mr. O'Neil. Likewise, the statement to Mr. O'Neil—that Lilac "will not be providing bar services at that venue starting in 2021"—is not actionable as defamation. The statement is unambiguously a statement about future events, not a "statement of existing fact." *Caron*, 470 A.2d at 785. The statement can only be understood as an expression of Silver Oaks's future intentions and its subjective opinion about what will occur in 2021. Its forward-looking statements were incapable of being true or false at the time they were made, and no ordinary person would understand that Silver Oaks was claiming to be in possession of any objectively verifiable facts. *See Gray*, 221 F.3d at 248. Silver Oaks cannot be held liable for defamation based on its statement to Mr. O'Neil.

Because the complaint fails to allege any defamatory statements of fact, Lilac has failed to state a defamation claim.

### 3. *Negligence*

Lilac also brings a claim of negligence, which requires proof of the following elements: (1) the existence of a duty; (2) a breach of that duty; (3) causation, and; (4) damages. *Alexander v. Mitchell*, 2007 ME 108, ¶ 14, 930 A.2d 1016. The complaint asserts that "[t]he Defendants have a duty to refrain from engaging in tortious, or otherwise illegal, conduct toward the vendors." Compl. ¶ 117. It further asserts that Silver Oaks breached that duty when it "engaged in conduct that interfered with Lilac's prospective economic advantage and contractual relations with Ms. Mello and Mr. O'Neil" and when it "made defamatory statements that harmed the professional and business interests of Lilac." Compl. ¶¶ 117-19.

11

Lilac's complaint fails to state a claim of negligence. As a threshold matter, the court observes that Lilac has essentially recast its tortious interference and defamation claims as a claim sounding in ordinary negligence. Thus, for the same reasons the court dismisses Lilac's tortious interference and defamation claims, it likewise dismisses its claim of negligence. *See, e.g., Harner v. Prudential Sec.*, 785 F. Supp. 626, 643 n.32 (E.D. Mich. 1992) (dismissing negligence cause of action where the negligence claim "essentially restated" a claim of fraud).

Moreover, as Silver Oaks points out, the complaint fails to establish that Silver Oaks owed Lilac any legal duty outside of their contractual relationship. Furthermore, Lilac has pointed to no authority suggesting that the law imposes a separate duty—distinct from the conduct actionable as defamation and tortious interference—to refrain from interfering with another's prospective economic advantage and to avoid making defamatory statements. For these reasons, the allegations do not fit within the contours of a negligence cause of action.

### 4. *Fraud*

Lilac's complaint sets forth a claim of fraud, alleging that "the Defendants falsely represented they wanted to enter a mutually beneficial business arrangement with Lilac, whereby the parties would maintain autonomy and independence as individual business entities." Compl. ¶ 123. Silver Oaks argues that Lilac has failed to plead the circumstances surrounding the alleged fraud with the requisite particularity. The court agrees.

The complaint is devoid of any facts demonstrating who made the allegedly false representation(s) and where and when the representation(s) were made. *See Suna*, 107 F.3d at 68 (explaining that to plead fraud with the particularity required, a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent"). The complaint loosely attributes the representation to "the defendants." It does not specify, however, who among the multiple defendants made the statement, or, if multiple individual defendants made statements, who said what. The complaint is simply

12

too vague to satisfy the particularity requirements of rule 9(b) and to state a claim of fraud. Accordingly, Lilac's fraud cause of action must be dismissed.

5. *Breach of Contract*

According to the complaint, Lilac entered into a written contract with Silver Oaks in April 2018. Compl. ¶ 138; Compl. Ex. A. Pursuant to that contract, Lilac would be the exclusive provider of beverage services at Silver Oaks for all "remaining unbooked Beverage Services" going forward. Compl. Ex. A. In exchange, Lilac would pay Silver Oaks a referral fee consisting of 10% of Lilac's profits earned from each event worked at Silver Oaks. Compl. ¶¶ 12, 24; Compl. Ex. A. Lilac alleges that "Defendants are breaching their contractual obligations to Lilac by engaging in tortious conduct, including defamatory statements and attempts to unilaterally cancel Lilac's third-party contracts at The Barn." Compl. ¶ 142.

In it motion to dismiss, Silver Oaks argues that the agreement was a contract of indefinite duration that was terminable at will by either party. It further argues that the complaint does not allege that Silver Oaks breached the agreement at any point during the pendency of their relationship—for instance, by using another vendor to provide bar services.

Lilac does little to address these arguments in its opposition to Silver Oaks's motion to dismiss. Instead of pointing to facts suggesting that Silver Oaks breached the 2018 agreement, Lilac reasserts its claimed right to perform beverage services contracts at Silver Oaks regardless of any contractual arrangement with them. *See* Lilac's Opp'n to Mot. Dismiss 13.

To obtain relief for breach of contract, a plaintiff must show "that the defendant breached a material term of the contract, and that the breach caused the plaintiff to suffer damages." *Tobin v. Barter*, 2014 ME 51, ¶ 10, 89 A.3d 1088. Lilac has failed to state a breach of contract cause of action.

At the outset, the court notes that Lilac has essentially restated its defamation and tortious interference claims as a breach of contract action. *See* Compl. ¶ 142 ("Defendants are breaching their contractual obligations to Lilac by engaging in tortious conduct,

13

including defamatory statements and attempts to unilaterally cancel Lilac's third-party contracts at The Barn"). The complaint fails to allege any separate contractual duty that Silver Oaks breached. While the complaint points to the 2018 agreement in which Silver Oaks agreed to make Lilac the exclusive provider of beverage services going forward, it does not allege a breach of that agreement. In fact, Lilac has seemingly abandoned any breach of contract theory based on a breach of the 2018 agreement. *See* Lilac's Opp'n to Mot. Dismiss 13 ("The referral agreement the Defendants rely on is completely unrelated to, and has no bearing upon Lilac's third-party contracts"). Rather, as noted, Lilac primarily focuses on its claimed right—independent of any contractual agreement with Silver Oaks—to perform on its third-party contracts. Regardless of whether such a right exists, it is not a right that sounds in any contractual arrangement with Silver Oaks. Accordingly, Lilac's breach of contract theory does not state a claim for relief.

While Lilac has apparently abandoned its breach of contract theory based on the 2018 agreement, the agreement is referenced multiple times in the complaint, so the court nevertheless considers whether the complaint provides a factual basis to conclude that Silver Oaks breached the 2018 contract. The court's review of the complaint does not reveal any past instances where Silver Oaks used another vendor to provide beverage services. Moreover, the allegations in the complaint do not support a claim that Silver Oaks committed a breach by terminating the agreement and no longer allowing Lilac to perform bar services at Silver Oaks starting in 2021. The court finds Silver Oaks's argument that the contract was terminable at will persuasive.

Under Maine law, "courts will not interpret contracts as being of infinite duration unless the agreement expressly states that is the intention of the parties." *Bangor & Aroostook R.R. Co. v. Daigle,* 607 A.2d 533, 535 (Me. 1992). Thus, when presented with a contract that does not specify a duration, the court will assume that "[s]uch a contract is terminable at will." *Roger Edwards, LLC v. Fiddes & Son, Ltd.,* 245 F. Supp. 2d 251, 262 (D. Me. 2003); *Burnell v. Town of Kingfield,* 686 A.2d 1072, 1074 (Me. 1996) (citing with approval *R.J.N. Corp. v. Connelly Food Prods., Inc.,* 529 N.E.2d 1184, 1187 (Ill. App.

14

1988), which held that a distributorship contract of indefinite duration is terminable at will).[5]

In this case, the court accepts Lilac's assertion that the 2018 agreement was a contract of indefinite duration. Compl. ¶ 25. Accordingly, the contract was terminable at will by Silver Oaks. Silver Oaks has no contractual obligation to use Lilac as its exclusive provider of beverage services in 2021 and no contractual obligation to allow Lilac on its property in 2021. Accordingly, the court dismisses Lilac's breach of contract claim.[6]

### 6. *Promissory Estoppel*

Lilac alleges a claim of promissory estoppel based on "The Defendants . . . promise that Lilac would be The Barn's exclusive beverage provider." Compl. ¶ 150. It also alleges that the promise induced it to enter into 24 contracts for bar and catering services at Silver Oaks for the 2020-21 season, and it declined other business opportunities in order to perform those contracts. Compl. ¶¶ 151-52.

---

[5] The Law Court has suggested that the right to terminate a non-employment contract at will may be limited by a "require[ment] that a contract remain in effect for a reasonable period of time and reasonable notice be given." *Daigle*, 607 A.2d at 535. The complaint, however, makes no allegations concerning the reasonableness of the notice given before the termination. Nor does it allege that the contract was in effect for an unreasonable period of time. Likewise, in its opposition to Silver Oaks's motion to dismiss, Lilac does not dispute the reasonableness of the notice given or the reasonableness of the time period during which the agreement was in effect. Rather, Lilac argues that it has a right to perform third party contracts at Silver Oaks, regardless of whether it had reasonable notice of the termination and regardless of whether the agreement was in effect for a reasonable period of time.

[6] While Lilac references the partial performance doctrine in its complaint, the court does not see how the doctrine applies based on the facts alleged. Lilac correctly notes that the partial performance doctrine is an exception to the statute of frauds. Lilac, however, has pointed to nothing in the complaint suggesting that Lilac had any sort of oral contract with Silver Oaks that prompted its partial performance. *MacCormack v. Brower*, 2008 ME 86, ¶ 5 n.3, 948 A.2d 1259. More fundamentally, Lilac's partial performance theory fails because there was a written and signed contract—the 2018 agreement—that governed the parties' relationship. *Id.* (partial performance doctrine inapplicable where there was "an express, signed contract in this case that governs the parties' relationship").

15

As far as the complaint reveals, Silver Oaks honored its promise in 2020. Nevertheless, the complaint suggests that Silver Oaks does not intend to honor the arrangement in 2021. The question, then, is whether the promise extended to the 2021 season. In its motion to dismiss, Silver Oaks argues that it did not promise Lilac any work beyond 2020, and that the court cannot enforce a promise that was never made.

Maine has adopted the definition of promissory estoppel that appears in the Restatement (Second) of Contacts § 90 (1981):

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

*Bracale v. Gibbs*, 2007 ME 7, ¶ 14, 914 A.2d 1112.

Moreover, to be enforceable under a theory of promissory estoppel, the promise must be sufficiently definite. *See Harvey v. Dow*, 2008 ME 192, ¶¶ 12-13, 962 A.2d 322 (explaining that "general promises to convey land as a gift or inheritance" are insufficiently specific to be enforceable under a theory of promissory estoppel); *Gagne v. Stevens*, 1997 ME 88, ¶ 13, 696 A.2d 411, 416 (holding that a promissory estoppel claim failed when there was "no promise specific enough to enforce"); *Bennett v. Waynflete*, No. CV-93-535, 1994 Me. Super. LEXIS 497, *10 (Oct. 7, 1994) ("an estoppel claim must be supported by a sufficiently definite promise"); *Ellenwood v. Exxon Shipping Co.*, 984 F.2d 1270, 1281 n.13 (1st Cir. 1993). This requirement is important in at least two ways. First, a "promise must be definite and certain so that the promisor should reasonably foresee that it will induce reliance by the promisee or a third party." *Santoni v. Fed. Deposit Ins. Corp.*, 677 F.2d 174, 179 (1st Cir. 1982). A promisor cannot reasonably expect a vague and indefinite promise to induce reliance on the part of the promisee. *See id.* Second, a promise needs to be "sufficiently definite to enable the court to ascertain its exact meaning and fix exactly the legal liabilities of each party." *Sullivan v. Porter*, 2004 ME 134, ¶ 13, 861 A.2d 625.

16

Here, the complaint fails to allege that Silver Oaks made a sufficiently definite promise that Lilac would be the exclusive provider of beverage services at Silver Oaks beyond 2020 or for any specific duration of time. Indeed, the promise alleged—that "Lilac would be The Barn's exclusive beverage provider" —contemplated no duration or date of termination. Moreover, the complaint fails to reveal any other facts showing that the promise had a fixed duration and extended to 2021.

At bottom, Lilac's promissory estoppel claim suffers from the same problem as its breach of contract claim: Silver Oaks's promise that Lilac would be its exclusive beverage provider was indefinite in nature and therefore, terminable at will. At most, Silver Oaks promised Lilac that it would be the exclusive beverage provider on an at will basis. There was no sufficiently definite promise that Lilac was guaranteed work at Silver Oaks in 2021 or for any determinate period of time. As such, Lilac has failed to state a claim for relief based on a promissory estoppel cause of action.[7]

### 7. *Intentional Infliction of Emotional Distress*

In its complaint, Lilac asserts that Silver Oaks has "engaged in numerous intentional and destructive acts against Lilac and the Phinneys" and its "actions have induced incredible stress, anxiety, and depression for Kimberly Phinney." Compl. ¶¶ 161, 163. As a result of the "Defendants' actions," the complaint alleges, Kimberly Phinney has suffered severe emotional distress to the point that she has "developed ulcerous conditions" and has experienced weight loss. Compl. ¶¶ 164-66. Silver Oaks moves to dismiss this count, arguing that Lilac fails to allege any extreme or outrageous conduct on the part of Silver Oaks.

---

[7] The court notes that Lilac has made subsequent assertions that are substantially at odds with its promissory estoppel claim. Lilac's promissory estoppel claim is based on "[t]he Defendants . . . promise that Lilac would be The Barn's exclusive beverage provider." Compl. ¶ 150. Lilac later asserts, however, that "[n]either Plaintiffs or Defendants had the expectation, or belief, that Lilac was the only vendor who could, or would, provide bar services at Silver Oaks at any point in time." Mot. to Supp./Mot. for Judicial Notice 4. Lilac even requests that the court take judicial notice that Lilac was never Silver Oaks's exclusive bar services provider.

The four elements of a claim for intentional infliction of emotional distress (IIED) are as follows:

(1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from her conduct; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Curtis v. Porter*, 2001 ME 158, ¶ 10, 784 A.2d 18 (quotation marks omitted) (alteration omitted).

"Recent Law Court decisions have endorsed the trial court's role as gatekeeper regarding IIED claims." *Temm v. LPL Fin. LLC*, No. PORSC-CV-16-0014, 2016 Me. Super. LEXIS 68, *7 (Apr. 29, 2016) (granting motion to dismiss claim of IIED); *Poor v. Bar Harbor Trust Servs.*, No. BCD-CV-18-27, 2019 Me. Bus. & Consumer LEXIS 33, *24-26 (Sept. 11, 2019) (same); *see also Argereow v. Weisberg*, 2018 ME 140, ¶¶ 27-30, 195 A.3d 1210 (affirming trial court's dismissal of a claim of intentional infliction of emotional distress for failure to state a claim where "[a]s a matter of law, [the defendant's conduct] f[e]ll[] short of the standard for actionable conduct necessary for [such] a claim"). Indeed, "[t]he determination of whether the facts alleged are sufficient to establish that the defendant's conduct is 'so extreme and outrageous to permit recovery' is a question of law for the court to decide." *Argereow*, 2018 ME 140, ¶ 27, 195 A.3d 1210; *Champagne v. Mid-Maine Med. Ctr.*, 1998 ME 87, ¶ 16, 711 A.2d 842 ("'it is for the Court to determine in the first instance whether the Defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery'").

Here, the facts alleged in Lilac's complaint cannot reasonably be interpreted to support a claim that Silver Oaks's actions were "so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community." *Curtis*, 2001 ME 158, ¶ 10, 784 A.2d 18. A threshold problem with the complaint is that it does not identify any facts revealing conduct that could be regarded

18

as extreme and outrageous. Rather, it makes broad references to "defendants' actions" and asserts—in a conclusory fashion—that this conduct has induced severe emotional distress. While Lilac argues that its complaint includes "multiple examples of the Defendants' 'extreme and outrageous' conduct," Lilac's Opp'n to Mot. Dismiss 17, Lilac does not identify what those examples are. Lilac simply fails to point the court to any factual allegations that support the assertion of extreme and outrageous conduct on the part of the defendants. Moreover, after viewing the allegations in the complaint in a light most favorable to the plaintiffs, the court does not see any conduct that could reasonably be characterized as "so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community." *Curtis*, 2001 ME 158, ¶ 10, 784 A.2d 18. In sum, the complaint does not state a claim for IIED against Silver Oaks.

8. *Punitive Damages*

Silver Oaks also moves to dismiss Lilac's claim for punitive damages. "Punitive damages must be based on underlying tortious conduct by the defendant." *Vicnire v. Ford Motor Credit Co.*, 401 A.2d 148, 155 (Me. 1979). "[A] claim for punitive damages will not lie unless the plaintiff receives compensatory or actual damages based on the defendant's tortious conduct." *Jolovitz v. Alfa Romeo Distributors of North America*, 2000 ME 174, ¶ 11, 760 A.2d 625.

Here, the court has ruled that dismissal is warranted on all counts. Because there is no underlying tortious conduct from which Lilac can seek to recover punitive damages, Lilac's request for punitive damages must also be dismissed.

9. *Injunctive Relief*

In a separate count in its complaint, Lilac requests preliminary and permanent injunctive relief. Injunctive relief is a remedy, not a standalone cause of action. *See, e.g., Nicholas v. Saxon Mortg. Servs.,* No. 11-73-P-H, 2011 U.S. Dist. LEXIS 44760, at *1 (D. Me. Apr. 26, 2011). Thus, for the court to grant injunctive relief, there needs to be a viable underlying legal claim. Because the court has determined that the complaint has failed to state a claim for relief, Lilac's request for injunctive relief is denied.

19

In short, Lilac's complaint fails to state any claim upon which relief may be granted. Thus, the court grants Silver Oaks's motion to dismiss Lilac's complaint on all counts.

### C. Lilac's Motion to Dismiss Silver Oaks's Counterclaim and Third-Party Complaint

Lilac moves to dismiss all counts of the counterclaim and third-party complaint pursuant to rule 12(b)(6). The court discusses each count below.

#### 1. *Tortious Interference with Economic Advantage and Contractual Relations*

Silver Oaks alleges that Lilac fraudulently interfered with its contracts by contacting its clients and by "making false representations with the goal of encouraging them to take their business elsewhere or abandon their deposit and find a new venue." Countercl./Third-Party Compl. ¶ 45. Lilac argues that Silver Oaks has failed to state a claim for tortious interference because, among other things, it failed to sufficiently plead the fraud element of its claim.

Interference through "fraud or intimidation" is an essential element of a tortious interference claim. *Rutland*, 2002 ME 98, ¶¶ 13-14, 798 A.2d 1104. Silver Oaks has not alleged any plausible acts of intimidation, so the court assesses whether the complaint states a claim for tortious interference by way of fraud.

As previously discussed, a plaintiff must state the circumstances surrounding fraud with particularity—which, at a minimum, requires a plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Suna*, 107 F.3d at 68 (internal quotation marks omitted). The only allegedly fraudulent statement in the counterclaim/third-party complaint that comes close to meeting this standard are those attributable to Zachery Phinney, who allegedly told Mr. Mihalakis that "Lilac was having issues with Silver Oaks, Silver Oaks was failing to comply with coronavirus-related CDC guidelines or other legal requirements applicable to event venues, and Silver/Oaks and/or the Carbonas were trying to secure contracts/deposits in

20

inappropriate ways to the detriment of their clients." Countercl./Third-Party Compl. ¶ 32.[8]

Otherwise, the counterclaim/third-party complaint rests on the vague descriptions of "false representations" made by unidentified speakers. *See* Countercl./Third-Party Compl. ¶ 45.

The allegedly fraudulent statements of Zachery Phinney, however, are insufficient to state a claim of tortious interference through fraud. As set forth above, an essential element of fraud is that another person "justifiably relies on the representation as true and acts upon it to the damage of the plaintiff." *Rutland,* 2002 ME 98, ¶ 14, 798 A.2d 1104. The counterclaim/third-party complaint fails to allege any facts demonstrating that Mr. Mihalakis relied on Zachery's statements as true and acted upon those statements to the detriment of Silver Oaks. Rather, the counterclaim/third-party complaint reveals that Mr. Mihalakis merely conveyed the content of Zachery's statements to the Carbonas and that was that.

Thus, the counterclaim/third-party complaint fails to sufficiently allege that Zachery Phinney interfered with the Mihalakis contract through fraud. Moreover, to the extent that Silver Oaks alleges that Lilac interfered with the contracts of other clients by making fraudulent statements, Silver Oaks has failed to describe those fraudulent statements with the particularity required by M.R. Civ. P. 9(b).[9]

---

[8] Still, the counterclaim/third-party complaint's allegations regarding Zachery's statements fall short of meeting the particularity requirements of M.R. Civ. P. 9(b). Indeed, the counterclaim/third-party complaint fails to offer any explanation regarding why Zachery's statements were fraudulent.

[9] In its opposition to Lilac's motion to dismiss, Silver Oaks "request[s] that they be permitted leave to amend their Counterclaims and Third-Party Complaint to address any deficiencies" "in the event the Court is inclined to grant any portion of the motion to dismiss." Silver Oaks's Opp'n to Mot. Dismiss 11. Silver Oaks has not identified any specific amendments that it would make nor does it attach a proposed amended pleading for the court to review. The court declines to rule on the propriety of an amendment that has not been presented and that lacks the specificity necessary to enable the court to decide whether such an amendment would be permissible pursuant to M.R. Civ. P. 15. Accordingly, the court denies Silver Oaks's request to amend.

## 2. *Defamation*

Lilac asserts that Silver Oaks failed to sufficiently plead a defamation cause of action. The court disagrees.

The facts alleged in the counterclaim/third-party complaint are sufficient to satisfy the elements of defamation, which requires proof of the following elements: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting to at least negligence on the part of the publisher; and; (4) actionability irrespective of special harm or the existence of special harm caused by the publication. *Cole*, 2000 ME 104, ¶ 5, 752 A.2d 1189. The counterclaim/third-party complaint plausibly alleges that Zachery Phinney made false statements to third parties about Silver Oaks's noncompliance with coronavirus regulations. It asserts, for instance, that Zachery falsely represented to Mr. Mihalakis, "that the Carbonas and Silver Oaks do not comply with the Governor's executive orders imposing social distancing obligations on Maine businesses as a result of the coronavirus public health pandemic." Countercl./Third-Party Compl. ¶¶ 32, 54, 57. The court is satisfied that Zachery's statement is actionable and defamatory. Lilac makes no argument to the contrary nor has it challenged Zachery's statement under defamation's first, third, or fourth elements.

Instead, Lilac focuses its attention on the second element, arguing that Zachery's statement qualifies under the conditional privilege exception. "A conditional privilege protects against liability for defamation when 'society has an interest in promoting free, but not absolutely unfettered, speech.'" *Morgan v. Kooistra*, 2008 ME 26, ¶ 32, 941 A.2d 447. "When a conditional privilege does exist, the defendant loses the privilege—and subjects itself to liability for defamation—only if it abuses the privilege by making the statement when it either knows the statement to be false or acts in reckless disregard of its truth or falsity (also known as 'actual malice) or when it 'act[s] entirely out of ill will toward [the plaintiff].'" *Waugh v. Genesis Healthcare LLC*, 2019 ME 179, ¶ 14, 222 A.3d 1063. "Whether a defendant abused the privilege is a question of fact." *Morgan*, 2008 ME 26, ¶ 34, 941 A.2d 447.

Here, Silver Oaks's defamation claim survives even assuming a conditional privilege applies. Indeed, the counterclaim/third-party complaint includes factual allegations suggesting that Zachery Phinney abused the privilege. For instance, the counterclaim/third-party complaint alleges that in conjunction with his assertion that Silver Oaks was failing to comply with CDC guidelines, Zachery told Mr. Mihalakis: "We don't give a fuck about The Barn anymore." Countercl./Third-Party Compl. ¶¶ 32-33. This allegation plausibly suggests that the Zachery was acting out of spite and ill will and was abusing any conditional privilege to which he might have been entitled.

Lilac also argues that a defamation claim requires a "knowing falsity" and the Carbonas "did not provide any factual allegations to support a showing that Zachery believed his representations were not true." Lilac's Mot. Dismiss 10. Lilac is mistaken. To state a claim for defamation, a plaintiff need not show that the defendant acted knowingly. A showing of negligence on the part of the defendant is sufficient. *Cole*, 2000 ME 104, ¶ 5, 752 A.2d 1189. Here, the court is satisfied that the allegations in the counterclaim/third-party complaint are sufficient to suggest that Zachery Phinney was at least negligent in asserting that the Silver Oaks was not abiding by coronavirus regulations. Thus, Silver Oaks's defamation claim survives—at least as it relates to Zachery Phinney and to his employer, Lilac.[10]

Silver Oaks, however, seeks to hold Kimberly, Clark, and Samantha Phinney individually liable as well. The court has reviewed the counterclaim/third party complaint, but does not see any facts that plausibly suggest that Kimberly, Clark, or Samantha Phinney uttered any defamatory statements. Accordingly, the court dismisses the defamation claim against these individuals.

### 3. *Civil Conspiracy*

Finally, Lilac moves to dismiss Silver Oaks's claim of civil conspiracy. "In Maine, conspiracy is not a separate tort but rather a rule of vicarious liability." *McNally v.*

---

[10] The court is satisfied that the factual allegations are sufficient to hold Lilac liable under the doctrine of respondeat superior.

*Mokarzel*, 386 A.2d 744, 748 (Me. 1978). Silver Oaks has pled civil conspiracy as a separate tort claim. Moreover, its motion papers frame its civil conspiracy claim as a standalone cause of action as opposed to a theory for holding the various members of the Phinney family vicariously liable for Zachery's allegedly defamatory conduct. As conspiracy is not a separate tort claim, this count may not go forward as pled. *See Abbott v. Inhabitants of Sanford*, No. AP-07-03, 2007 Me. Super. LEXIS 106, *3 (May 29, 2007); *White v. Meador*, No. 01-153-B-H, 2002 U.S. Dist. LEXIS 9, *8 (D. Me. Jan. 2, 2002).

In any event, the court alternatively concludes that the facts alleged in the complaint are insufficient to hold Kimberly, Clark, and Samantha Phinney vicariously liable for Zachery's defamatory acts under a civil conspiracy theory.[11] "To state a claim for civil conspiracy, the plaintiffs must allege that the defendants conspired to commit a tort and that acts were taken in furtherance of the conspiracy." *Speedway Holdings Assocs. v. Bahr*, No. Cv-00-501, 2001 Me. Super. LEXIS 91, *2-3 (June 18, 2001); *Cohen v. Bowdoin*, 288 A.2d 106, 111-12 (Me. 1972) ("'All those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt his acts done for their benefit, are equally liable with him.'").

Here, Silver Oaks's claim of conspiracy rests in large part on conclusory allegations, which the court need not accept as true. Moreover, the few facts Silver Oaks relies on to support its conspiracy claim do not plausibly suggest that Kimberly, Clark, and Samantha acted in concert with Zachery to commit defamation. The court does not see how the email chain involving Samantha, Kimberly, and Mr. Schlutt advances Silver Oaks's claim of conspiracy. The email chain does not show that Kimberly or Samantha were working with Zachery or had any awareness of what Zachery was allegedly saying to Silver Oaks's

---

[11] Silver Oaks's defamation claim against Zachery (and Lilac) is the only surviving claim. Accordingly, Zachery's alleged defamation is the only tort for which the rest of the Phinney family may be held vicariously liable based on a civil conspiracy theory.

clients. As far as the email chain reveals, Kimberly and Samantha were acting independently—not in concert with Zachery in furtherance of a common plan to defame.[12]

In an attempt to demonstrate that thePhinney family was acting in furtherance of a conspiratorial plan, Silver Oaks points to paragraph 33 of its counterclaim/third-party complaint, which alleges that Zachery told Mr. Mihalakis that "*[w]e* don't give a fuck about The Barn anymore"; "*[w]e* are looking out for you," and; "*[w]e* know their inner workings." As a threshold matter, it is unclear who "we" is referring to. Even assuming "we" is referring to Zachery and the rest of the Phinney family, Zachery's statements do not plausibly suggest that Kimberly, Clark, and Samantha took part in a conspiracy to defame. At most, the statements reveal that the Phinney family harbored mutual animosity toward Silver Oaks and were unified in their negative opinions about Silver Oaks. To state a claim for conspiracy, however, the facts must show more than shared feelings of animosity. Rather, the facts must plausibly allege that the Phinney's shared a common plan—the object of that plan being the commission of a tort, i.e., defamation. *Cohen*, 288 A.2d at 111-12. Zachery's statements fail to suggest that the Phinneys were unified around a common goal to defame. Moreover, the court cannot identify any other facts from which it may infer such a common plan. For instance, as noted, there is no indication that Kimberly, Clark, and Samantha had any knowledge of Zachery's defamatory statements, there are no instances of the Phinneys working together with Zachery, and there are no facts suggesting that the Phinneys perpetuated Zachery's defamatory message. Accordingly, the facts alleged in the counterclaim/third-party complaint are insufficient to

---

[12] Furthermore, the email chain fails to reveal any statements that perpetuated Zachery's allegedly false assertion that Silver Oaks was not complying with coronavirus-related regulations. On the contrary, Kimberly was not reporting noncompliance, but rather seeking confirmation and proof that Mr. Schlutt's upcoming wedding at Silver Oaks would take place with the necessary state approvals and would comply with coronavirus guidelines. Countercl./Third-Party Compl. Ex. A. If anything, encouraging Mr. Schlutt to obtain proof of compliance undermined Zachery's message because Mr. Schlutt's resultant investigation would presumably reveal that Silver Oaks was compliant and that any suggestion otherwise was false.

impose liability on Kimberly, Clark, and Samantha Phinney under a civil conspiracy theory.

## II. Lilac's Motion for Leave to File a Supplemental Complaint Pursuant to M.R. Civ. P. 15(d)

Lilac has also filed a motion for leave to supplement its complaint pursuant to M.R. Civ. P. 15(d). In its motion, Lilac provides a narrative of various events that took place after the filing of the complaint that it says supports its claims for tortious interference, defamation, and IIED. Lilac attaches to its motion several exhibits, including various email communications involving mutual Lilac-Silver Oaks clients.

Silver Oaks, meanwhile, opposes Lilac's motion to supplement. It points out that Lilac failed to append a proposed supplemental pleading to its motion, and the motion papers themselves fail to establish the requisite elements of the tort claims alleged in the initial complaint. Silver Oaks also attaches various supporting documents to its opposition motion.

Rule 15(d) of the Maine Rules of Civil Procedure provides that:

> Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of claim or relief or defense. If the court deems it advisable that the adverse party plead to the supplemental pleading, it shall so order, specifying the time therefor.

M.R. Civ. P. 15(d).

The "discretion exercised by the court in deciding whether to grant leave to amend is similar to that exercised on a motion for leave to file a supplemental pleading." *Ericson v. Magnusson*, No. 2:12-cv-00178-JAW, 2013 U.S. Dist. LEXIS 12992, *9 (D. Me. Jan. 31, 2013) (quoting 6A Charles Alan Wright, Arthur A. Miller & Mary Kay Kane, Federal Practice and Procedure § 1504, at 256 (3d ed. 2010)).[13] Rule 15 should be "liberally

---

[13] In interpreting M.R. Civ. P. 15(d), the Law Court has looked to interpretations of the comparable federal rule for guidance. *See Rancourt v. Bangor*, 400 A.2d 354, 356 (Me. 1979); *see*

applied to achieve the goal set forth in Rule 1: the 'just, speedy and inexpensive determination of every action.'" *Rancourt v. Bangor*, 400 A.2d 354, 356 (Me. 1979). Thus, courts will ordinarily grant a motion to file a supplemental pleading unless allowing the supplemental pleading would prejudice the defendant, would unreasonably delay the litigation, or would be futile. *Id.*; *Travis H. v. Saul*, No. 1:19-cv-00374-NT, 2020 U.S. Dist. LEXIS 102828, *3 (D. Me. June 12, 2020).

"A futile amendment is one that would fail to state a claim upon which relief could be granted." *Saul*, 2020 U.S. Dist. LEXIS 102828, *3 (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)). "In other words, if the proposed amendment would be futile because, as thus amended, the complaint still fails to state a claim, the district court acts within its discretion in denying the motion to amend." *Id.* at *4.

In this case, the court concludes that granting Lilac's motion for leave to supplement its complaint would not promote a "just, speedy and inexpensive determination" of this matter. *Rancourt*, 400 A.2d at 356. On the procedural side of things, the court notes that Lilac has failed to submit a proposed supplemental pleading with its motion for leave. This failure has left the court and the defendants to speculate as to the actual contents of the supplemental complaint and whether the supplemental complaint is capable of stating a legal claim.

Without a proposed supplemental pleading, the court has only the motion papers to go by. After reviewing the motion papers, the court concludes that supplementing the complaint with the additional material would likely be futile. Lilac argues that the events highlighted in its motion for leave support its claims for tortious interference, defamation, and IIED, but the supplemental events do not allow Lilac to state a claim for many of the same reasons its complaint fails.

---

*also Bean*, 2008 ME 18, ¶ 11, 939 A.2d 676 ("Where a Maine Rule of Civil Procedure is identical to the comparable federal rule, [the Law Court has] value[d] constructions and comments on the federal rule as aids in construing [Maine's] parallel provision.").

With respect to Lilac's claim of tortious interference, the court does not see any conduct that would qualify as fraud or intimidation, and the falsehoods alleged have not been described with the particularity required. Nor does the court see any statements that are actionable as defamation. As far as the court can tell, the statements Lilac complains of constituted either advice or opinions that would not be understood as statements of fact. Moreover, at least some of the statements were accurate and others have not been attributed to Silver Oaks. Finally, the court does not see any extreme and outrageous conduct that could state an IIED claim. Thus, for these reasons, the court denies Lilac's motion for leave to supplement its complaint.

## III. Lilac's Request for Judicial Notice

Lilac requests that the court take judicial notice on two points. Specifically, it asks the court to judicially notice that: (1) it is generally known within the court's territorial jurisdiction that "venue providers providing only the space, such as Silver Oaks, do not generally assert control or decision-making powers over their client's vendor choices," and; (2) Lilac was never the defendant's exclusive bar services provider.

The Maine Rules of Evidence provide that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) Is generally known within the trial court's territorial jurisdiction; or (2) Can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." M.R. Evid. 201. "To be a proper subject of judicial notice, a fact must be a matter of common knowledge, which is generally accepted without qualification or contention." *State v. Rush*, 324 A.2d 748, 750 (Me. 1974) (holding that it was error to notice judicially that a car is necessary for personal and family transportation). "The modern trend has enlarged the concept to include matters which are of such verifiable certainty that they may be confirmed by reference to sources of indisputable accuracy." *Id.*

Here, it would not be appropriate for the court to take judicial notice of either purported fact identified by Lilac. The first purported fact—that "venue providers providing only the space" do not assert control over their clients' vendor choices—is not the type of generally known fact that rises to the level of common knowledge. Moreover,

28

apart from its own assertions, Lilac has failed to bring to the court's attention any sources that support this allegedly unassailable fact. Lilac's subjective and unverified assertions are inappropriate sources for judicial notice. *Samsara Mem'l Tr. v. Kelly*, 2014 ME 107, ¶ 29 n.6, 102 A.3d 757 (explaining that "subjective and unverified opinions [] are inappropriate sources for judicial notice").

Moreover, the court declines to take judicial notice that Lilac was never Silver Oak's exclusive bar services provider. While Lilac asserts that such a "fact" can be readily ascertained from "the parties' own practices, procedures and contracts," the court disagrees. Indeed, given the language in the parties' contract—which provides that "all remaining unbooked beverage services at [Silver Oaks] will be serviced *only* by [Lilac]"—it is evident that the question of exclusivity is very much subject to reasonable dispute.[14]

In short, the "facts" identified by Lilac are neither matters of uncontested common knowledge nor are they capable of certain verification. As such, the court denies Lilac's requests for judicial notice.

## CONCLUSION

Because Lilac's complaint fails to state a claim upon which relief may be granted, the court grants Silver Oaks's motion to dismiss Lilac's complaint on all counts. Moreover, the court denies Lilac's request for punitive damages and injunctive relief as well as its motion for leave to supplement its complaint and its request for judicial notice.

With respect to Lilac's motion to dismiss Silver Oaks's counterclaim and third-party complaint, the court grants Lilac's motion as to the claims of tortious interference (Count 1) and civil conspiracy (Count 3). The court also grants Lilac's motion to dismiss Silver Oaks's defamation claim (Count 2) as to Kimberly Phinney, Clark Phinney, and

---

[14] It is worth noting that Lilac itself provides conflicting information on this point, revealing that the matter is subject to reasonable dispute. *Compare* Compl. ¶ 139 (alleging that the 2018 agreement "stipulated Lilac would be the exclusive provider of beverage services at The Barn"), *with* Mot. to Supp./Judicial Notice Request 5 (requesting that the court judicially notice that "Lilac was never the Defendant's exclusive bar services provider").

29

Samantha Phinney. However, the court denies Lilac's motion to dismiss the defamation claim as to Lilac and Zachery Phinney.

The entry is:

- Silver Oaks's motion to dismiss the complaint is GRANTED on all counts;
- Lilac's motion to dismiss Count 1 and Count 3 of the counterclaim/third party complaint is GRANTED;
- Lilac's motion to dismiss Count 2 of the counterclaim/third party complaint is GRANTED as to Kimberly Phinney, Clark Phinney, and Samantha Phinney;
- Lilac's motion to dismiss Count 2 of the counterclaim/third party complaint is DENIED as to Lilac and Zachery Phinney;
- Lilac's request for punitive damages and preliminary and permanent injunctive relief is DENIED;
- Lilac's motion for leave to supplement its complaint is DENIED;
- Lilac's request for judicial notice is DENIED.

The Clerk is directed to incorporate this Decision and Order into the docket of this civil case by notation reference in accordance with M.R.Civ.P. 79(a).

Dated: January 19, 2021

Entered on the docket 1/20/2021

William R. Stokes
Justice, Maine Superior Court

30

KIMBERLY PHINNEY - PLAINTIFF
23 GLENWOOD STREET
AUGUSTA ME 04330
Attorney for: KIMBERLY PHINNEY
ELISA C ELLIS - RETAINED
ELLIS LAW
227 WATER STREET SUITE 222
AUGUSTA ME 04330

CLARK PHINNEY - PLAINTIFF
23 GLENWOOD STREET
AUGUSTA ME 04330
Attorney for: CLARK PHINNEY
ELISA C ELLIS - RETAINED
ELLIS LAW
227 WATER STREET SUITE 222
AUGUSTA ME 04330

LILAC MIXOLOGY AND CATERING - PLAINTIFF
23 GLENWOOD STREET
AUGUSTA ME 04330
Attorney for: LILAC MIXOLOGY AND CATERING
ELISA C ELLIS - RETAINED
ELLIS LAW
227 WATER STREET SUITE 222
AUGUSTA ME 04330

vs
EUGENE A CARBONA 3RD PRTY PLT (DIMISSED - DEFENDANT
155 OLD KENTS HILL ROAD
READFIELD ME 04355
Attorney for: EUGENE A CARBONA 3RD PRTY PLT (DIMISSED
STEPHEN E F LANGSDORF - RETAINED
PRETI FLAHERTY ET AL
45 MEMORIAL CIRCLE
PO BOX 1058
AUGUSTA ME 04332-1058

ROCIO V CARBONA 3RD PRTY PLT (DISMISSE - DEFENDANT
155 OLD KENTS HILL ROAD
READFIELD ME 04355
Attorney for: ROCIO V CARBONA 3RD PRTY PLT (DISMISSE
STEPHEN E F LANGSDORF - RETAINED
PRETI FLAHERTY ET AL
45 MEMORIAL CIRCLE
PO BOX 1058
AUGUSTA ME 04332-1058

THE BARN AT SILVER OAKS ESTATE (DISMISSED) - DEFENDANT
155 OLD KENTS HILL ROAD
READFIELD ME 04355

**DOCKET RECORD**

MLR/SC #153-21

Attorney for: THE BARN AT SILVER OAKS ESTATE (DISMISSED)
STEPHEN E F LANGSDORF  - RETAINED
PRETI FLAHERTY ET AL
45 MEMORIAL CIRCLE
PO BOX 1058
AUGUSTA ME 04332-1058

ZACKERY PHINNEY  - THIRD PARTY DEFENDANT
23 GLENWOOD STREET
AUGUSTA ME 04330
SAMANTHA PHINNEY  - THIRD PARTY DEFENDANT
23 GLENWOOD STREET
AUGUSTA ME 04330

Filing Document: COMPLAINT                    Minor Case Type: GENERAL INJUNCTIVE RELIEF
Filing Date: 07/14/2020

## Docket Events:

07/14/2020 FILING DOCUMENT - COMPLAINT FILED ON 07/14/2020

07/14/2020 Party(s):  KIMBERLY PHINNEY
           ATTORNEY - RETAINED ENTERED ON 07/14/2020
           Plaintiff's Attorney: ELISA C ELLIS

07/14/2020 Party(s):  CLARK PHINNEY
           ATTORNEY - RETAINED ENTERED ON 07/14/2020
           Plaintiff's Attorney: ELISA C ELLIS

           Party(s):  LILAC MIXOLOGY AND CATERING
           ATTORNEY - RETAINED ENTERED ON 07/14/2020
           Plaintiff's Attorney: ELISA C ELLIS

07/14/2020 Party(s):  KIMBERLY PHINNEY,CLARK PHINNEY,LILAC MIXOLOGY AND CATERING
           MOTION - OTHER MOTION FILED ON 07/14/2020
           Plaintiff's Attorney:  ELISA C ELLIS
           MOTION TO ALLOW LATE FILINGS

07/14/2020 Party(s):  KIMBERLY PHINNEY,CLARK PHINNEY,LILAC MIXOLOGY AND CATERING
           MOTION - OTHER MOTION GRANTED ON 07/14/2020
           WILLIAM  STOKES , JUSTICE
           MOTION TO ALLOW LATE FILINGS

07/15/2020 Party(s):  EUGENE A CARBONA 3RD PRTY PLT (DIMISSED
           SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 06/03/2020
           EUGENE CARBONA

07/15/2020 Party(s):  EUGENE A CARBONA 3RD PRTY PLT (DIMISSED
           SUMMONS/SERVICE - CIVIL SUMMONS FILED ON 07/14/2020

07/15/2020 Party(s):  ROCIO V CARBONA 3RD PRTY PLT (DISMISSE
           SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 06/03/2020
           ROCIO CARBONA

07/15/2020 Party(s):  ROCIO V CARBONA 3RD PRTY PLT (DISMISSE